JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Terry L. Cuccarese (Cuccarese), appeals from the judgment of the Lyndhurst Municipal Court finding him guilty of domestic violence. For the following reasons, we reverse and remand.
 {¶ 2} On March 25, 2006, Mayfield Village police officer Stephen M. LaBuda (LaBuda) filed a complaint against Cuccarese alleging one count of domestic violence against his wife, Cynthia A. Cuccarese (Cynthia), in violation of Mayfield Village Ordinance (MVO) 537.14(a).
 {¶ 3} On March 27, 2006, the trial court proceeded to arraignment, set bond, and granted LaBuda's motion for a temporary protection order on behalf of Cynthia Cuccarese.
 {¶ 4} On September 20, 2006, the case proceeded to a jury trial. On September 22, 2006, the jury found Cuccarese guilty of domestic violence and guilty of disorderly conduct. The trial court set a sentencing hearing for September 26, 2006.
 {¶ 5} On September 26, 2006, the trial court determined that it required a presentence investigation report for sentencing purposes and continued sentencing to November 2, 2006.
 {¶ 6} On October 4, 2006, Cuccarese filed a Crim.R. 29 motion for acquittal and a motion for a new trial; both were denied by the court on October 31, 2006. *Page 4 
 {¶ 7} On November 2, 2006, the trial court determined that it did not have Cuccarese's presentence investigation report because Cuccarese failed to appear for its completion. The trial court again continued Cuccarese's sentencing hearing until a presentence investigation report was completed.
 {¶ 8} Once the presentence investigation report was completed, the court set a hearing for December 21, 2006. However, at the hearing, the court noted that Cuccarese had filed a notice of appeal on November 30, 2006, and thus the trial court determined that it lacked jurisdiction to sentence him. On January 12, 2007, Cuccarese's appeal was dismissed for lack of a final appealable order. State v. Cuccarese (Jan. 12, 2007), Cuyahoga App. No. 89114. Upon notice thereof, the court reset Cuccarese's sentencing hearing.
 {¶ 9} On February 15, 2007, the trial court proceeded to sentencing. The trial court nolled Cuccarese's conviction for disorderly conduct. The court thereafter sentenced Cuccarese to 180 days of imprisonment and imposed a $1000 fine, but suspended his sentence pursuant to the following: that no similar circumstances occur; conditions of probation are followed; payment of $500 of the imposed fine ($500 suspended); one year of community control sanctions to include either anger management or family counseling and periodic progress reports; Cuccarese to pay jail costs; and lastly, the trial court dissolved the temporary protection order.
 {¶ 10} The facts giving rise to the instant case occurred on March 24, 2006, at 871 Worton Park Drive, Mayfield Village, Ohio, the home of Cuccarese and Cynthia. *Page 5 
On the night in question, Cuccarese and Cynthia stayed home to watch a movie while their daughter, Carla Cuccarese ("Carla") stayed at a friend's house. A disagreement ensued over financial matters.
 {¶ 11} After the disagreement, Cynthia called Carla to come home and pick her up. After Carla picked Cynthia up however, Cynthia realized she left important medication at home. Cynthia flagged down a Highland Heights police officer near I-271 and Wilson Mills Road and asked for assistance in retrieving her medication. The Highland Heights officer directed her to a nearby gas station so that a Mayfield Village officer could assist Cynthia. Cynthia and Carla proceeded to the Mayfield Village police station where Cynthia and Carla explained to the officers what had transpired and that Cynthia needed her medication. Cynthia also informed the police that her husband had guns in the home.
 {¶ 12} Mayfield Village police officers went to the Worton Park Drive home but the house was locked, all lights were out, and no one came to the door. Carla, escorted by three or four officers, returned to the Worton Park Drive home. Upon arrival, Carla unlocked the door with her key and the officers entered. The officers found that the lightbulbs had been removed from all the light fixtures on the first floor. The officers proceeded toward the staircase with their flashlights and found Cuccarese at the top of the stairs. The officers followed Cuccarese into the master bedroom where they found a handgun, loaded and cocked, underneath a pillow on the bed. The officers arrested Cuccarese for domestic violence without incident. *Page 6 
 {¶ 13} Cuccarese appealed and asserted sixteen assignments of error for our review. In the interest of judicial economy, we address these assignments of error out of order.
ASSIGNMENT OF ERROR NUMBER FOUR
"The Trial Court erred in admitting hearsay testimony, in violation of the Ohio Rules of Evidence."
 {¶ 14} Cuccarese argues that alleged statements made by Cynthia, and testified to by every witness, is hearsay and not admissible under the excited utterance exception to the hearsay rule. We agree.
 {¶ 15} We review the admission and exclusion of evidence upon an abuse of discretion standard. State v. Finnerty (1989), 45 Ohio St.3d 104. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 16} "`Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). However,
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). *Page 7 
 {¶ 17} As such, excited utterances are not the result of reflective thought, but rather, they are reactive thought. State v. Taylor (1993),66 Ohio St.3d 295. The Supreme Court of Ohio provided a four-part test to determine the admissibility of excited utterances:
 "Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Potter v. Baker (1955), 162 Ohio St. 488, at paragraph two of the syllabus. The trial court admitted Cynthia's statements as testified to by Officer Argie,
Officer Deardon, Officer LaBuda, and Carla as excited utterances under Evid.R. 803(2).
 {¶ 18} Carla testified that all she knew of the incident is what her mother told her. (Sept. 21, 2006, Tr. at 33.) Carla was not present during the incident in question. Carla's written statement reveals no more than what Cynthia told her when she wrote: "Apparently he pushed her away into a wall." (Emphasis added.) Carla testified that Cynthia sounded "normal" over the phone. (Sept. 21, 2006, Tr. *Page 8 
at 5.) Carla also testified that when she picked up Cynthia, she "looked fine." (Sept. 21, 2006, Tr. at 7.)
 {¶ 19} Officer Deardon, who Cynthia flagged down for assistance in retrieving her medicine, testified that Cynthia was holding her face, crying, and very upset. (Sept. 21, 2006, Tr. at 118.) Cynthia asked Officer Deardon for assistance in retrieving her medication from home. (Sept. 21, 2006, Tr. at 151.) Cynthia's interaction with Officer Deardon occurred at least forty-five minutes after Cynthia had left her home. Officer Argie's hearsay testimony revealed the following: "Mrs. Cuccarese, the mother, who was in the altercation, further explained what happened. She stated how she wanted us to go get her medication that was back at the home * * *." (Sept. 20, 2006, Tr. at 229). Officer Argie described Cynthia as trembling and crying, that her face was red and puffy, and that she appeared intoxicated. (Sept. 20, 2006, Tr. at 227.)
 {¶ 20} Officer LaBuda testified that Cynthia told him that her husband assaulted her and "smacked her around and she wanted to get her medication and she was afraid to go back to the house and wanted to know if we would escort her back there." (Sept. 21, 2006, Tr. at156-158.) "She told me that her husband became upset, they had been fighting about money, he's been drinking more and more. He slapped her several times, threw her into the wall, held her head down to the floor and said he was going to kill her." (Sept. 21, 2006, Tr. at 162-163.) *Page 9 
 {¶ 21} In applying the first prong of Potter to the foregoing facts, we find that Cynthia did experience a startling event, namely, an argument with Cuccarese, that was enough to produce a nervous excitement. Cynthia admitted to having an argument with her husband.
 {¶ 22} Regarding the second prong of Potter, the statements Cynthia made after her argument with Cuccarese do not appear to be spontaneous and unreflective. Notably, the Supreme Court of Ohio found that:
 "[A]s a general rule, when an oral utterance is made while the exciting event is still in progress courts have little difficulty in invoking the spontaneous exclamation exception to the hearsay rule, but as the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance. * * * Nevertheless, in our opinion each case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation." State v. Duncan (1978), 53 Ohio St.2d 215.
 {¶ 23} Cynthia's statements to Carla took place within a few minutes to twenty minutes after the argument. Cynthia's statements to the officers took place approximately forty-five minutes or more after the argument. Therefore, the challenged statements were not made strictly contemporaneous with the argument.
 {¶ 24} Furthermore, Cynthia's statements were not made before there had been time for such nervous excitement to lose domination over her reflective faculties. Carla described her mother during their shared phone call as "normal."
The officers testified that Cynthia was upset and crying, but there is no evidence that *Page 10 
her excitement resulted from her argument with Cuccarese. Rather, the evidence shows that Cynthia was upset because she forgot her medication at home and wanted assistance retrieving it. Therefore, any nervous behavior Cynthia displayed to the officers was in regard to her medication and not nervous excitement resulting from her argument with Cuccarese. Thus, the second prong of Potter fails here because the statements made by Cynthia to Carla and the officers regarding her argument with Cuccarese were not an unreflective and sincere expression of her actual impressions and belief, but rather a reflective attempt to retrieve her medicine.
 {¶ 25} Regarding the third element in Potter, Cynthia's statements did not relate to a startling event, namely, her argument with Cuccarese. Rather, her statements to Carla were calculated and intended to get her out of the home to cool off. Cynthia's statements, according to the police, pertained only to her need for medication. At most, Cynthia's crying resulted either from her physical need for medication to which she was deprived, the mental stress from being deprived of her medication, and/or from the fact she appeared intoxicated. Cynthia's statements, regarding her argument with Cuccarese were simply an explanation for her need for assistance in retrieving the medication. Thus, the third prong of Potter fails in the instant case.
 {¶ 26} As the second and third prongs of Potter fail in application to the case sub judice, we need not address the fourth and finalPotter prong. We find that admission of those statements constituted an abuse of discretion. *Page 11 
 {¶ 27} Cuccarese's fourth assignment of error is sustained.
ASSIGNMENT OF ERROR NUMBER SEVEN
 "The trial court abused its discretion in denying appellant's Motion in Limine to preclude evidence of appellant's possession of firearms and admitting firearms and testimony concerning them, where firearms were not used in the commission of the offense charged."
 {¶ 28} Cuccarese argues that the trial court erred when it denied his motion in limine to exclude evidence of his firearm possession. We agree.
 {¶ 29} We review motions in limine upon an abuse of discretion standard. DiFranco v. Bond Court Hotel, Cuyahoga App. No. 61745, 1993 Ohio App. LEXIS 710.
 {¶ 30} Evid.R. 403(A) reads as follows: "Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Furthermore, "Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).
 {¶ 31} Cynthia knew that her husband owned firearms and told the police that he owned firearms. This information was important for the officers to know prior to entering Cynthia's home for safety reasons. However, the probative value of admitting the firearms evidence is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, and of misleading the jury. The alleged act of *Page 12 
domestic violence occurred on the first floor of the home. The weapons were confined to the master bedroom on the second floor of the home. At no time were the weapons or the use of a weapon mentioned regarding this alleged incident of domestic violence.
 {¶ 32} Cuccarese is charged with misdemeaner domestic violence for allegedly pushing his wife into a wall. Cuccarese was not charged with a felony involving a firearm. Thus, admission of the firearms evidence was highly prejudicial, created confusion of issues, namely, which actions Mayfield Village charged as criminal, and thus, created great danger of misleading the jury.
 {¶ 33} Therefore, we find that the trial court abused its discretion when it denied Cuccarese's motion in limine to exclude evidence of his firearm possession.
 {¶ 34} Cuccarese's seventh assignment of error is sustained. In light of our ruling on Cuccarese's fourth and seventh assignments of error, his remaining assignments of error are moot.
 {¶ 35} Judgment reversed and remanded for further proceedings.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and ANN DYKE, J., CONCUR *Page 1