[Cite as *Cohen & Co. v. Breen*, 2014-Ohio-3915.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100775**

# COHEN & COMPANY

PLAINTIFF-APPELLEE

vs.

# JAMES P. BREEN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-789388

**BEFORE:** McCormack, J., Blackmon, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 11, 2014

**ATTORNEYS FOR APPELLANTS**

Philip S. Kushner
Christian J. Grostic
Kushner & Hamed Co., L.P.A.
1375 East 9th St.
Suite 1930
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Andrew A. Kabat
Daniel M. Connell
Haber, Polk, & Kabat, L.L.P.
737 Bolivar Road
Suite 4400
Cleveland, OH 44115

TIM McCORMACK, J.:

**{¶1}** After a jury trial, the trial court awarded accounting firm Cohen & Company ("Cohen") $166,015.06 in fees James P. Breen ("Breen") owed Cohen for accounting services Cohen rendered in Breen's divorce case. On appeal, Breen contends that the trial court erred in excluding evidence relating to the accounting firm's failure to perform its duties according to the accounting standards set forth in the parties' agreement. After a careful review of the record and applicable law, we affirm the judgment of the trial court.

## The Underlying Divorce Case and the Accounting Services

**{¶2}** The Breens were married in 2000. Kerri Breen ("Mrs. Breen") filed for divorce in 2009. Before he was married, Breen owned significant real estate through five business entities. The real estate included the IMG Building and the Lincoln Building in downtown Cleveland, and several commercial office buildings in the suburbs. The values of these buildings decreased significantly during the Breens' marriage. Under the law, any appreciation in value of premarital properties during the marriage is subject to division; however, if Breen could show the properties decreased in value during the marriage, there would be no appreciation subject to division. In addition, although the real estate had an approximate combined value of $14 million, in Breen's estimate they were all "under water" due to the large amount of mortgage obligations. The valuation of the real estate was the focus of the four-year divorce proceeding.

**{¶3}** Breen initially hired Ciuni & Panichi to perform accounting services for his divorce case. The matter went to trial in February 2011. In the second day of trial, however, his divorce counsel was suspended from practice. The trial was continued to a later date, and Breen retained new counsel, who recommended the accounting firm Cohen & Company.

**{¶4}** Breen and Cohen entered into a letter of engagement in April 2011. The agreement provided that the partner hourly rates range from $295 to $395, the professional staff rates range from $135 to $295, and support staff range from $115 to $155.

**{¶5}** Cohen provided various accounting services for Breen in the divorce matter, from April 2011 to May 2012. The total bill came to $163,300.

**{¶6}** Andrew Finger was the partner for this engagement. According to his testimony in the subsequent trial, his staff reviewed more than 25 boxes of documents, which contained Breen's personal and business financial information. The review covered a period of over 12 years. At the request of Breen's divorce counsel, Finger prepared three reports for the purposes of determining property division and calculating Breen's support obligations.

**{¶7}** The first report prepared by Cohen was a valuation report. It valuated Breen's ownership interests in five business entities that owned or operated the real estate at issue. The report was to determine the fair market value of Breen's interests in these business entities at the date of his marriage and determine whether they had increased or

decreased in value over the 12-year period of his marriage. Finger's report showed that the business entities all decreased in value over the period of his marriage. In fact, the report showed that for four of the five business entities, the value of Breen's ownership interest was zero at the time of the divorce.

{¶8} The second report prepared by Cohen for the divorce proceeding was an income- and-cash-flow report for the purpose of determining Breen's spousal and child support obligations.

{¶9} The third report prepared by Cohen was a "tracing" report to allow Breen to prove the premarital portion of Breen's assets. It traced every dollar coming into or going out of each of his business entities during the 12-year period of the marriage. To prepare this report, Cohen's work included creating a statement of shareholders' equity for each property every year of the 12-year period and it involved sorting out all the loan transactions among the entities over the period of time.

{¶10} According to Finger, at some point during the engagement, he realized most of the properties would be "under water" and he raised the question of the necessity of the costly valuation and tracing work with Breen's divorce counsel, who assured him that both the valuation and the tracing were critical to the ability of Breen to retain the ownership of all his assets in the divorce proceeding.

{¶11} At the divorce trial, Mrs. Breen's counsel challenged Finger's testimony about his valuation of the real estate at issue. After Finger testified at great length about his valuation methodology, Mrs. Breen's counsel filed a motion to exclude the valuation

report and Finger's testimony. However, before the trial court ruled on the motion, the Breens decided to settle. Under the settlement agreement, Breen retained all five business entities.

{¶12} The bill of Cohen's accounting services, including the three reports and court testimony, came to $163,300. According to Finger's testimony at trial, in order to support the value opinions presented in the reports, Cohen had to conduct a thorough review of a vast number of documents spanning over a 12-years period, making the engagement very time-consuming and costly.

{¶13} Breen paid an initial retainer of $10,000 and later paid another $12,000. After trying to work out a payment plan with Breen, without success, Cohen filed the instant breach of contract action to collect unpaid fees of $141,300, plus interest.[1]

{¶14} In response to Cohen's collection action, Breen filed a counterclaim, alleging accounting malpractice and professional negligence by Cohen. Among other contentions, Breen alleged Finger's valuation report improperly adopted an appraisal

---

[1] Regarding the payment history, Finger testified that Cohen sent Breen the bills monthly, beginning in July 2011. Breen did not pay, but he did not question the amount of the bills either, and Cohen continued its work. The valuation and income-and-cash-flow reports were completed in August 2011, and the tracing report was completed in November 2011. By September 2011, there was a balance of $86,000 and a payment plan was worked out to allow Breen to pay $2,000 per month towards his outstanding balance. In a letter agreement signed by Breen on September 6, 2011, Breen acknowledged he owed $86,000 for Cohen's services. In the letter, he also acknowledged that additional time will be incurred for its services, including time for deposition and court testimony. Breen stated in that letter that he was unable to pay due to his divorce proceeding, but agreed to pay $2,000 per month toward the balance. Breen, however, made few payments under this agreement. At the end, he paid a total of $22,000, including the $10,000 retainer up front. He owed $166,015.06, including finance charges, at the time Cohen's complaint was filed.

report prepared by James Huber, an appraiser hired by Mrs. Breen. Breen also alleged Finger offered testimony at the divorce trial that was inconsistent with his written report.

{¶15} Breen requested several extensions of time to obtain an expert for his counterclaim, which the trial court granted. However, apparently unable to secure an expert, Breen voluntarily dismissed the counterclaim before trial.

{¶16} After Breen dismissed his counterclaim, Cohen filed a motion in limine to preclude Breen from introducing evidence concerning alleged accounting malpractice or failure to satisfy the applicable accounting standard of care. The trial court granted Cohen's motion in limine, on the ground that Breen had no expert to support his claim that Cohen failed to adhere to the standards of care. The court, however, allowed Breen to cross-examine Finger regarding the services provided by Cohen and its compliance with the engagement letter, to the extent the testimony did not involve applicable accounting standards. The court's ruling on the motion in limine and exclusion of evidence regarding Cohen's failure to comply with accounting standards is the subject of this appeal.

{¶17} After a three-day trial, the jury awarded Cohen $200,015, including accrued interests. Breen filed a motion for a new trial or, in the alternative, for remittitur. The trial court denied a new trial, but remitted the judgment to $166,015. Breen now appeals. He raises a single assignment of error, which states:

> Where an element of plaintiff's claim was that it performed its duties under the contract, the trial court erred by barring defendant from introducing evidence of, cross-examining witnesses regarding, or even making

reference to, plaintiff's failure to perform its duties according to the standards underlying and set forth in the contract.

**{¶18}** We review motions in limine on an abuse of discretion standard. *Mayfield v. Cuccarese*, 8th Dist. Cuyahoga No. 89594, 2008-Ohio-1812, ¶ 29. In general, the decision whether to admit or exclude relevant evidence lies within the discretion of the trial court. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An appellate court will not reverse that decision absent an abuse of discretion and a showing of prejudice. *Id.*

**{¶19}** In this appeal, Breen's claim focuses on his allegation of a failure to adhere to applicable standards in Finger's valuation report and Finger's testimony at the divorce trial. He argues Finger's performance fell below the standard of care referenced in the parties' letter of engagement, and, in this manner, Cohen failed to fulfill its contractual obligations, relieving Breen's duty to pay.

**{¶20}** Breen points to the portion of the engagement letter that stated that Cohen would provide services in connection with the performance of a valuation engagement, as defined by Statement on Standards for Valuation Services #1 issued by the American Institute of Certified Public Accountants ("SSVS #1"), "in order to determine or to evaluate and reply to an opposing expert's opinion" of the fair market value of James Breen's ownership interests.

**{¶21}** Breen alleges that the valuation report prepared by Finger to value Breen's ownership interests in the five business entities relied on the appraisal report by James Huber, an opposing expert; furthermore, because Huber's report was not produced as an

exhibit by either party, Finger's opinion and testimony was called into question by Mrs. Breen's counsel.

**Finger's and Breen's Testimony at Trial**

{¶22} The valuation report prepared by Finger, which was admitted as an exhibit at trial, stated that Cohen performed a valuation of Breen's ownership interests in various entities as the term is defined in "SSVS #1" of the American Institute of Certified Public Accountants. It also stated that the valuation "was conducted in accordance with the "SSVS #1." At trial, Finger, a member of the American Institute of Certified Public Accountants, who was also certified in financial forensics, testified that in valuing the various business entities, he utilized the "Adjusted Book Value Method." Under this method, a balance sheet for each business entity was generated, which consisted of a listing of all the assets and liabilities of the business entity.

{¶23} To determine the fair market value of the property owned by the businesses, in turn, Finger used the "Capitalization of Earnings Method." Finger explained that, under the "Capitalization of Earnings Method," one would identify the earnings expected to be generated from the property annually and then determine the appropriate capitalization rate ("multiple"). The property's value would then be arrived at by applying the capitalization rate/multiple to the earnings.

{¶24} Finger explained that the capitalization rate for each property is based on various risk factors. He testified that in determining the appropriate "capitalization rate" for the subject properties, he considered Huber's appraisal report, among other data. He

stated that in his testimony in the divorce trial, he made it very clear that he independently determined "the net operating income" and he considered a range of items in determining the "capitalization rate," including Huber's appraisal report, a report prepared by appraiser Richard Racek, the county tax valuation, the statistics in the capitalization rates proposed by Price Waterhouse Coopers, and capitalization rates proposed by "CB Richard Ellis."

**{¶25}** Finger admitted that his use of the Huber appraisal in his valuation report was challenged by Mrs. Breen's counsel at trial. He testified, however, that whether his reports were admissible in the divorce proceeding had nothing do with his responsibilities as an accounting professional regarding the reports.

**{¶26}** Finger acknowledged that the Huber report carried a "restrictive use" provision, but testified that Mrs. Breen's counsel did not challenge his use of Huber's report based on that designation. Finger also stated that, generally, when a valuation report was prepared, it was customary to allow the opposing party to use it.

**{¶27}** Breen did not have an expert for his claim that Cohen's performance fell below the applicable standard of care for an accounting professional. Although he acknowledged that, because he dismissed the counterclaim, the issue of accounting malpractice was not before the trial court, he nonetheless attempted to offer his own testimony to show that the service provided by Cohen failed to adhere to the accounting standards.

**{¶28}** Breen testified Finger's performance was deficient in failing to challenge Huber's report. He pointed out that the letter of engagement stated that Cohen was to perform a valuation engagement "in order to determine or to evaluate and reply to an opposing expert's opinion" of the value of his ownership interests in various entities, yet Finger failed to rebut Huber's report. In particular, a tenant in one of the properties had been six months late for rental payments. Huber valuated the property based on what Breen considered an extraordinary assumption that the tenant would become current soon. Breen testified that he expected Finger to challenge and investigate the issue in his own valuation report but Finger failed to do so. When questioned by Breen's counsel on this issue, Finger explained that he did not use the "rent roll" and income information from the Huber report regarding the property. Instead, he determined the "net operating income" of the property on his own, based on the financial statements of the company involved, to arrive at his opinion of the property's value.

**{¶29}** Breen also testified that Finger's testimony in the divorce trial was inconsistent with the valuation method utilized in his report. However, the trial court here did not permit him to further testify or elaborate, on the ground that he was not qualified as an expert. Throughout the trial, the trial court disallowed testimony from Breen regarding his criticism of Finger's valuation methodology because Breen was not an expert.

## Law and Analysis

{¶30} Although Breen withdrew his counterclaim of accounting malpractice and professional negligence due to a lack of expert, it appears he attempted to offer his own testimony on this issue by couching his claim as one for breach of contract, contending that Cohen did not comply with the contractual terms by failing to adhere to the accounting standards referenced in the letter of engagement.

{¶31} "The term 'malpractice' refers to professional misconduct, i.e. the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances." *Strock v. Pressnell*, 38 Ohio St.3d 207, 211, 527 N.E.2d 1235 (1988), citing 2 Restatement of the Law 2d, Torts, Section 299(A) (1965). In the context of legal and medical malpractice, the courts have held that "malpractice by any other name still constitutes malpractice," whether predicated on contract or tort. *Pierson v. Rion*, 2d Dist. Montgomery No. CA23498, 2010-Ohio-1793, ¶ 14, citing *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App.3d 89, 89-90, 446 N.E.2d 820 (10th Dist.1982). The Tenth District in *Muir* explained that "professional misconduct may consist either of negligence or of breach of the contract of employment. It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice." *Muir* at 90. *See also Omlin v. Kaufmann & Cumberland Co., L.P.A.,* 8th Dist. Cuyahoga No. 82248, 2003-Ohio-4069, ¶ 15; *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 8th Dist. Cuyahoga No. 98861, 2014-Ohio-25, ¶ 33.

{¶32} "[B]ecause claims of professional negligence involve knowledge that is beyond the ken of laypersons, expert testimony is required to assist the trier of fact in determining these issues." *Vosgerichian v. Mancini Shah & Assocs.*, 8th Dist. Cuyahoga Nos. 68931 and 68943, 1996 Ohio App. LEXIS 788, *8-9, (Feb. 29, 1996), citing *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 592 N.E.2d 828 (1992) (expert testimony was necessary to establish the prevailing standard of care where the professional skills and judgment of a nurse were alleged to be deficient).

{¶33} At the trial, the valuation report was submitted as an exhibit and it stated that Cohen performed a valuation of Breen's ownership interests in various entities as the term is defined in "SSVS #1" of the American Institute of Certified Public Accountants. It also stated that the valuation "was conducted in accordance with the "SSVS #1." Finger, a certified public accountant, testified that he performed the services in conformity with the letter of engagement.

{¶34} Despite framing his claim as one for breach of contract, the claim that Cohen failed to adhere to applicable accounting standards is in essence a claim of malpractice. Breen lacked expert testimony to prove his allegations that Cohen's services fell below applicable standard of care for accounting professionals, a subject matter beyond the knowledge of a lay person and requiring and the assistance of an expert. Therefore, the trial court did not abuse its discretion in granting plaintiff's motion in limine and excluding evidence on this issue.

{¶35} Judgment of the Cuyahoga County Court of Common Pleas is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

PATRICIA ANN BLACKMON, P.J., and
MELODY J. STEWART, J., CONCUR