[Cite as *State v. Herring*, 2017-Ohio-743.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 104441

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KRYAN B. HERRING

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-595823-A

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** March 2, 2017

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio    44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Aqueelah A. Jordan
Assistant Prosecuting Attorney
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Kryan Herring appeals from a verdict finding him guilty of aggravated burglary, two counts of robbery against separate victims, disrupting public service, grand theft, domestic violence, and endangering a child. Herring also challenges as excessive the resulting prison sentence of 19.5 years from consecutive service of the individual sentences — nine years on the aggravated burglary, six years on the robbery, and 18 months each on the disrupting telephone service, grand theft, and domestic violence convictions. We affirm the judgment of the trial court.

**{¶2}** The victim had a relationship with Herring in the past, and the two maintained contact afterwards. The couple had a child together, who lived with the victim. The victim also had two other children. Herring and the victim got into an oral argument one night in April 2015, but Herring left the victim's home without any incident. He returned the next morning in an attempt to get the keys to his car. Herring believed that the victim was hiding his keys, and he viciously attacked her when she told him otherwise. One of the children, Herring's child in fact, tried to intercede but only managed to have Herring push her aside, although the child described it as being punched. The children testified that Herring did not live in the house, and everyone confirmed that Herring did not have keys to or possessions in the residence. Herring also did not have any keys to the victim's car that he took; the keys he used belonged to the victim.

**{¶3}** While Herring was beating her, the victim tried to call the police, but Herring interceded. The victim threw the phone to her 8-year-old daughter who tried to call the police. Herring grabbed the phone from the child. It is unclear what happened to the phone. The victim ran from the house and called the police from a neighbor's residence. During that time, Herring stole the victim's car and fled the scene.

**{¶4}** After the police arrived and took the victim to the hospital for treatment, Herring returned to the house while the older, teenaged daughter was home. Herring broke into the house by kicking through the back door. Herring again began searching through the victim's belongings for his car keys. Herring left before the daughter could summon help.

**{¶5}** Herring was arrested on May 7, 2015, and the arraignment was scheduled for June 10. Although the docket reflects that Herring was not in custody before the arraignment, the state assumed he was in custody between May 7 and the June 10 arraignment; 102 speedy-trial days occurred. Herring absconded after June 10 and was not brought into custody until October 29, 2015. On November 5, the state filed a demand for discovery, and 24 more speedy-trial days occurred. Nothing in the record indicates when Herring answered discovery. Nevertheless, Herring requested several continuances before the pretrial conference was finally held on February 25, 2016, and another pretrial conference was set for March 3, which actually occurred on March 10 because of Herring. Another 21 triple-counted days were added to the ongoing tally. The March 14 trial date was pushed back for two weeks upon Herring's request, leading

to 54 additional days. At the end of March, the trial court became unavailable, and as a result, trial did not commence until April 4. Twenty-four days were added to the final tally. Giving Herring the benefit of every doubt, only 225 days counted toward the state's 270-day limit between arrest and trial. Herring turned down the state's offer to plead guilty to grand theft and domestic violence with all other charges, including the aggravated burglary, to be nolled.

{¶6} At trial, the victim's children testified that Herring did not live at their home. The victim testified last. Despite what she had told police officers, the victim claimed that Herring lived with her and the children. Out of the jury's presence, the trial court inquired into the victim's testimony, demonstrably put off by the victim's failure to timely appear for trial and for claiming Herring lived with her despite the unequivocal evidence to the contrary. The trial court reminded the victim of her oath and the consequences of perjury and allowed the state an opportunity to privately discuss the situation with the victim. Upon returning to the record, still outside the presence of the jury, it was determined that during trial, Herring had used another inmate's phone privileges to give out the victim's telephone number. The victim told the court she had lied about Herring living with her because people were contacting her telling her to do so in order to create doubt as to the aggravated burglary charge. The trial court allowed the state to recall the victim, who then told the jury what had transpired and that Herring did not live with her. The recorded jail-house calls were played to demonstrate why the victim originally lied.

Herring unsuccessfully objected, claiming that the recorded calls violated Evid.R. 404(B) and recalling the witness was a violation of his due process rights.

{¶7} This timely appeal followed, in which Herring advanced seven assignments of error.

{¶8} Herring claims his federal and state constitutional rights to a speedy trial were violated because he was arrested in May 2015 and trial did not commence until April 2016. Such an argument is unpersuasive because it ignores the significant tolling that was attributed to Herring's failure to appear at his arraignment and his repeated requests for continuances of court dates after he was brought into custody at the end of October 2015. The state had 270 days to commence trial. R.C. 2945.71(C)-(E). At best, considering the tolling events and Herring's disappearance, only 225 days counted toward that limit.

{¶9} Further, ignoring the delay in bringing Herring into custody after the missed arraignment, less than 12 months transpired from his May 2015 arrest until the April 2016 trial under the federal speedy trial analysis. *State v. Winn*, 8th Dist. Cuyahoga No. 98172, 2012-Ohio-5888, ¶ 44, citing *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (defendant must make a threshold showing of presumptively prejudicial delay before triggering any further analysis, presumptively prejudicial being defined as a period of one year). Herring's trial occurred in a timely fashion.

**{¶10}** At trial, the victim initially told the jury that Herring lived with her at the house, despite the children testifying to the contrary. The victim's testimony was fabricated. It was determined that Herring violated a no-contact order and had others contact the victim inducing her false testimony. The trial court allowed the state to recall the victim to the stand to correct her testimony and allowed the state to play the jail-house recordings to explain the victim's action to the jury.

**{¶11}** Herring claims that the recorded conversations violated Evid.R. 404(B) and 403 because the state did not have a legitimate basis for allowing the admission of the evidence. Herring solely relies on the dissenting opinion in *State v. Carter*, 8th Dist. Cuyahoga No. 90796, 2009-Ohio-226, as authority requiring the exclusion of the recordings. We are bound to follow the majority analysis from *Carter* — that telephone recordings painting the offender in a bad light are admissible for other legitimate purposes under Evid.R. 404(B). The cited authority supports the trial court's decision to admit the evidence, and Herring has not presented any reasons for us to distinguish or seek en banc review of *Carter*.

**{¶12}** Evid.R. 404(B) states the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Id.* at ¶ 39. The evidence, in this case, was presented not to prove bad character of the accused or that he acted in conformity with that character, but for the purpose of

explaining to the jury why the victim lied about Herring's living situation. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. Herring has not demonstrated that the evidence was unduly prejudicial; his sole focus was that the evidence was introduced to prove conformity with other uncharged conduct.

{¶13} Furthermore, as Herring conceded, there is no error in merely warning a witness of the consequences of perjury. *United States v. Stuart*, 507 F.3d 391, 398 (6th Cir.2007). The victim ultimately testified at trial despite Herring's actions, and the testimony was corroborated by the victim's children. The trial court's admonishment about the consequences of perjury only prejudiced Herring insomuch as his attempt to illegally induce contrary evidence was unsuccessful. The trial court did not err when it warned the victim of the consequences of her false testimony. *Id.*

{¶14} And finally on this issue, not every out-of-court statement implicates the Confrontation Clause as Herring claims. *See, e.g., State v. Montgomery*, Slip Opinion No. 2016-Ohio-5487, ¶ 88. Herring's sole argument regarding the victim's testimony that implicated Herring in violating the no-contact order through third parties wrongly presumes the existence of a per se rule that excludes any reference to another's statement at trial. In this case, the victim referenced the fact that other persons contacted her on Herring's behalf to explain to the jury why her recall testimony differed from her direct examination. We find no error.

{¶15} Herring next seeks to overturn his convictions for aggravated burglary, robbery, grand theft, and disrupting public service as being against the sufficiency or the

manifest weight of the evidence. According to Herring, (1) the victim and he had a relationship, so the state needed to prove Herring lacked permission to enter the house; (2) he accidentally beat the victims and that deprived the state of evidence of an intent to cause serious physical harm for the robbery counts; (3) he sometimes had permission borrow the victim's car at some indefinite point in time, so the car was not actually stolen on April 29, 2016; and (4) he did not violate the disrupting public services statute because "there is no evidence that he was disrupting phone services as contemplated by the statute."

{¶16} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} The sufficiency of the evidence arguments are without merit. R.C. 2911.21(A) defines criminal trespass, the underpinnings of an aggravated burglary charge, as remaining on the premises of another without the privilege to do so, and nothing in the record indicates Herring had permission to remain in the home as he beat the victim, even if the trier of fact believed he was initially allowed to enter. There is ample evidence that the vicious attack on the victim was not accidental. The victim

testified that Herring did not have permission to take her car after the beating, so the children's testimony that Herring sometimes was seen driving her car in the past is irrelevant to the events on April 29, 2015. And finally, Herring has not presented any supporting authority, as required under App.R. 16(A)(7), for his conclusion that R.C. 2909.04(A)(1) does not contemplate his conduct as being criminal. Appellate courts are not obligated to formulate legal arguments on behalf of the parties. *Risner v. Ohio Dept. of Natural Resourses*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718. Upon our review of the arguments as presented, we can only conclude that the evidence presented at trial sufficed.

{¶18} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶19} We decline the request to undertake our own extensive, independent review of the evidence to determine whether this is that exceptional case in light of the limited nature of the argument advanced in a single paragraph of appellate briefing that glosses through 300 pages of transcribed trial testimony. Herring claims that this case "boils

down to a dispute between two people who were in a relationship and had a child together. There was an altercation and injuries but the record does not fairly support convictions for burglary, robbery, grand theft or disrupting public service." Herring has not addressed the crux of the state's case, in which the state demonstrated that although invited into the home, Herring's invitation was revoked when he viciously attacked the victim and her children, stole her car after the beating and while the police were being summoned, and then returned when the victim was in the hospital with only her teenaged daughter in the home. Herring has not demonstrated a basis for us to conclude that a manifest miscarriage of justice occurred.

{¶20} With respect to the arguments advanced challenging the aggregate sentence, Herring claims his robbery conviction, with the indictment identifying the victim's daughter as the person against whom the robbery was committed, should have merged with the aggravated burglary conviction under the Ohio Supreme Court's analysis in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. Burglary and robbery are committed as separate acts under the *Ruff* analysis; burglary is typically completed upon entering the premises. *State v. Jackson*, Slip Opinion No. 2016-Ohio-5488, ¶ 129; *see also State v. Anthony*, 2015-Ohio-2267, 37 N.E.3d 751, ¶ 72-73 (8th Dist.) (S. Gallagher, J.,dissenting). Although aggravated burglary includes the element of some form of harm to a person present in the home, Herring ignores the holding in *Ruff* that a crime committed against separate victims is considered of dissimilar import as a matter of law. *Ruff* at second paragraph of the syllabus. We need not dwell on the differences between

burglary and the aggravated form of the crime. The aggravated burglary count in this case was predicated on the intent to commit a robbery against the victim. The robbery count was based on Herring's act of assaulting the victim's daughter while committing or attempting a theft offense, after completing the act of entering or remaining in the home with the intent to commit a criminal act and causing serious physical harm to the victim. The robbery with the daughter as the named victim and the aggravated burglary were committed by assaulting separate victims and by separate acts. The two crimes are not allied offenses of similar import. *Ruff.*

{¶21} Finally, Herring's sentence is not contrary to law. The 19.5 years of prison imposed in this case was a product of consecutive service of the individual prison terms. Herring's argument against the aggregate sentence, however, is based on injecting the R.C. 2929.11 and 2929.12 analysis of sentencing factors into review of the consecutive sentencing. The notion that trial courts must rely on R.C. 2929.11 and 2929.12 in considering consecutive sentences under R.C. 2929.14(C)(4) is without merit. *State v. Jones*, 8th Dist. Cuyahoga No. 104152, 2016-Ohio-8145, ¶ 12, citing *State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326, ¶ 7. Although a trial court may consider the sentencing factors for the purposes of making the findings for consecutive sentences under R.C. 2929.14(C)(4), the court is not required to do so and an appellate court cannot weigh the individual sentencing factors in order to overturn the imposition of consecutive service. *Id.* Appellate review is limited. R.C. 2953.08(G)(2).

**{¶22}** There is no argument that the findings were not made or that the findings were clearly and convincingly not supported by the record. The sole focus in this appeal is on the sentencing factors and how an appellate review of those factors would lead us to the conclusion that concurrent terms would have sufficed. The standard of appellate review over the imposition of consecutive sentences is whether this court can clearly and convincingly find that the record does not support the findings. R.C. 2953.08(G)(2). Our review is not to determine whether the sentencing factors under R.C. 2929.11 or 2929.12 weigh in favor of concurrent terms. The review Herring seeks is statutorily precluded and, therefore, overruled.

**{¶23}** The only other arguments with regard to the aggregate sentence advanced on appeal was that the 19.5 years were disproportionate to Herring's conduct and the danger he posed to the public because the state offered a maximum of 36 months on domestic violence and grand theft charges during plea negotiations. Proportionality under R.C. 2929.14(C)(4) refers to the offender's conduct and the danger he poses to the public, not a negotiated plea offer. A trial court need not consider the terms of a rejected plea offer in considering the proportionality of consecutively served sentences.

**{¶24}** Further, the state's plea offer came before the jury found Herring guilty of seven counts, a far more extensive set of crimes than those of the plea deal, before the trial court learned of Herring's extensive history of felony convictions, 16 felony convictions in 15 years in Cuyahoga County alone, and before Herring's attempt to intimidate a witness during trial, which was discovered by the state during trial two days

after Herring was recorded on another prisoner's jail phone account giving others the victim's telephone number and asking those persons to contact the victim. Herring has not addressed the change in circumstances that occurred from the plea offer to the final sentencing, his extensive history of criminal conduct, or the fact that the guilty plea involved only two crimes. Even if we could consider the plea offer as a legitimate starting point for the proportionality analysis, it would only be a starting point and not the sole consideration.

{¶25} The convictions and consecutively imposed sentences are affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH
SEPARATE OPINION


MELODY J. STEWART, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶26} I concur with the majority decision except with regard to the following issues.

{¶27} The basis for the aggravated burglary count is unclear. During Herring's Crim.R. 29(A) motion, the state very clearly told the court that the aggravated burglary was premised on the second incident in which Herring kicked the door open and entered the house:

> THE COURT: Which episode is the State pursuing here as burglary?
>
> [THE PROSECUTOR]: It would be the second episode, your Honor, where he kicks in the door. Yes, as it's listed in the indictment, it initially talks about [the victim], but it's clear from the date, April 29th, the defendant is put on notice of a property that he's attempting to enter which is clear from the indictment. And the fact that harm was present when you kick in a door and enter a home. And you heard [the daughter] testify that she didn't know what he was going to do, she tried to call grandma, she talked to grandma on the phone. She didn't want to let him in the house. And she testified to hearing this kick, kick, kick at the door and then seeing the door fly in. That's more than sufficient to establish that count, your Honor.

Tr. 318-319.

{¶28} However, during closing argument to the jury, the state referenced both incidents as the basis for the aggravated burglary:

> How did the defendant get into that occupied structure? Well, at first, [the victim] lets him in, but there comes a point in time when she no longer wants him there and she tries to get him out. And the point that she tries to get him out is the point that he remains on and at that point he is trespassing. But we can take that step forward because he comes back a second time and he kicks in the door after he's put out the first time eventually.

Tr. 328.

**{¶29}** Not only did the state confuse when the aggravated burglary occurred, it confused the underlying felony. Count 1 of the indictment charged that Herring trespassed in the home with the intent to commit a robbery. The state had this to say about it in closing argument:

> With purpose to commit in this structure a criminal offense. What does the defendant do while he is in the home? Well, the first time he's in the home, we know he punches [the victim] in her face. We know he's pushing and shoving her. We know he leaves the home with her car keys, her cell phone, and her car. All of which are criminal offenses. We know while he's in the home, he keeps [the victim] from calling for help by taking her cell phone. Yet another criminal offense. And we only need one. You have multiple here.

Tr. 329.

**{¶30}** While the state's argument touched on an actual theft that could be a basis for robbery, it also mentioned other acts like punching the victim and keeping her from talking on her cell phone as being a basis for aggravated burglary, too. If the aggravated burglary truly was premised on the second incident, no robbery occurred that day. I believe that what transpired at trial was confusing enough to make the jury's verdict questionable.

**{¶31}** The conviction for disrupting public services is likewise suspect. R.C. 2909.04(A)(1) states that no person shall "interrupt or impair television, radio, telephone, telegraph, or *other mass communications service* * * *." (Emphasis added.) Appellate courts in this state have held that under this section, "the deciding factor * * * is whether the defendant's conduct caused the victim to be unable to use that telephone." *State v. Hill*, 7th Dist. Mahoning No. 09MO3, 2010-Ohio-4871, ¶ 25. *See also State v. Galindo*,

5th Dist. Stark No. 2011CA00258, 2012-Ohio-3626, ¶17; *State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977, ¶ 13.

**{¶32}** I submit that those cases are arguably wrong. R.C. 2909.04(A)(1) applies to "damaging or tampering with any property" for the purpose of interrupting or impairing "*mass communications service.*" This indicates more than preventing a call — it requires disruption of a "*mass communications service.*" Importantly, Herring did not interrupt an actual telephone call. The victim did not testify that she actually dialed 911, so no communication was interrupted. If R.C. 2909.04(A)(1) is interpreted to support a conviction in this case, any taking of a cell phone would support a conviction under R.C. 2909.04(A)(1), whether or not a call has been made. And, taken to its logical conclusion, an interpretation that taking a cell phone from someone constitutes the offense of disrupting mass communication services would make it a third-degree felony, punishable by up to five years in prison, for a parent's act of taking a cell phone from a child who refuses to turn the phone off and go to bed as instructed.

**{¶33}** Although neither Count 2 nor 3 of the indictment charging robbery specified the nature of the theft offense, during the Crim.R. 29 motion proceedings the state told the court that both counts were premised on the cell phone, with Count 2 pertaining to the mother and Count 3 pertaining to the daughter:

> In regards [sic] to Count 2 and 3, the robbery counts, your Honor, there was testimony from [the mother] that the defendant, after punching her in her face, took her cell phone that she tried to give to [the daughter]. And [the mother] testified that she gave the cell phone to [the daughter] because she didn't think the defendant would take it from his eight-year old daughter.

And in fact, he did, and she never saw that phone again. That is evidence before this jury to consider.

Tr. 319-320.

**{¶34}** The mother testified at odds with herself: on direct examination she said that Herring took the phone from her; but on cross-examination she said that Herring was "trying to get it from me" and that she gave the phone to "daughter because I didn't think he would try to get it from my daughter." The daughter very clearly testified that she had the cell phone, but said nothing about whether Herring took it. The mother, however, testified that Herring took the phone away from the daughter. The sister testified that the daughter came upstairs, but said nothing about whether or not there was a phone.

**{¶35}** It is difficult to understand how Herring took the phone from the mother, yet the mother was able to give the phone to her daughter so that both sets of fact could support a robbery conviction. At best, the mother testified that Herring was "trying to get it from me." She did not testify that he took the phone and that she was able to get it back from him before giving it to the daughter.

**{¶36}** None of this is for naught just because the court merged one of the robbery counts into the aggravated burglary count. Ordinarily, when the court merges one offense into another, an appellate court has no obligation to consider whether the merged count is supported by the sufficiency of the evidence. *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 18. However, the state made it clear during the Crim.R. 29 proceedings that the aggravated burglary in Count 1 consisted of the

second incident in which Herring kicked open the door to the house.    The state should be held to that theory, meaning that the court erred by finding Herring guilty of aggravated burglary with the robbery being the underlying crime.    That being the case, the merger of Counts 1 and 2 should not affect this court's ability to review the sufficiency of the evidence with respect to Count 2.    Since both robbery counts are still viable, one of them should be vacated.