[Cite as *State v. Nunez*, 2017-Ohio-4295.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104623

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EMILIO NUNEZ, JR.

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-603121-A

**BEFORE:** S. Gallagher, J., McCormack, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 15, 2017

**ATTORNEY FOR APPELLANT**

Edward F. Borkowski, Jr.
P.O. Box 609151
Cleveland, Ohio 44109


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Adam M. Chaloupka
       T. Allan Regas
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113

SEAN C. GALLAGHER, J.:

**{¶1}** Emilio Nunez, Jr., appeals his felonious assault conviction. Nunez was sentenced to an eight-year term of imprisonment, but does not challenge his sentence, only the finding of guilt. We affirm.

**{¶2}** Nunez was charged in a two-count indictment with one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of domestic violence, in violation of R.C. 2919.25(A). The domestic violence count alleged that Nunez had two prior domestic violence convictions that elevated the charge from a first-degree misdemeanor to a third-degree felony.

**{¶3}** Nunez had a long-standing relationship with K.K., who became pregnant during their relationship. One of the prior domestic violence incidents happened in August 2015, when K.K. was eight months pregnant. Lakewood police officers responded to a report of a domestic dispute. K.K. was found outside the apartment building with her belongings and a bruise under her left eye, and was visibly distraught. She told the officers she had been arguing with the father of her unborn baby. A surveillance video of the incident, played for the jury in the instant case, depicts the prior assault. Photographs of K.K.'s injuries at the time of the 2015 assault were also admitted into evidence. On cross-examination, Nunez admitted that he threw K.K. into the door "intentionally," and that he pleaded guilty to one count of domestic violence as a result of the prior incident. Tr. 372, 392.

{¶4} The incident giving rise to this case occurred in January 2016. At that time, K.K. was subleasing an apartment from Matthew Allen because she needed a place to stay. Sarah Brandenburg, the victim's friend, testified that on the evening of January 24, 2016, she and Nunez went to visit K.K. at her apartment. K.K. appeared weak and had a blackened right eye from another incident that occurred between K.K. and another person weeks earlier. K.K. asked them to leave almost immediately, and when Nunez refused, K.K. chased him from the room, striking his back multiple times.

{¶5} Later that night, Allen called the Lakewood police for assistance in removing K.K. from the apartment because he learned some disturbing information about K.K. and he wanted her out of the apartment. One of the officers observed that K.K. had an old bruise on her right eye and some old scrapes and bruises on her arm that showed signs of healing. Tr. 189.

{¶6} Two hours later, Lakewood police received a call from a nearby Walgreens store at the corner of Detroit Avenue and West 117th Street in Lakewood, Ohio, concerning a woman who had been assaulted. In the 911 call, which was played for the jury and made part of the record, K.K. told the dispatcher that she had been assaulted by her boyfriend, Nunez, twice in the last 24 hours, and that they had a prior domestic violence case together. The 911 recording was played for the jury, and K.K. confirmed it was her voice.

{¶7} The same officers from earlier in the evening responded to the Walgreens store and spoke with K.K., who had obviously sustained new injuries, including

additional swelling and redness around her eye. An ambulance transported K.K. to Lakewood Hospital where she was diagnosed with a broken nose, multiple rib fractures, and a contused sacrum. She told a nurse and physician's assistant in the emergency room that her "boyfriend" had beaten her that day, as well as the day before. K.K., in a written statement for police officers, indicated Nunez had beaten her and caused her injuries. Tr. 246-250.

{¶8} K.K. testified that she did not remember calling 911 or making a written statement for police because she was intoxicated and on prescription medication at that time. However, the attending physician and physician's assistant testified that if K.K. had been intoxicated, they would have noticed and documented that fact in K.K.'s chart. They also testified that if K.K. was grossly intoxicated, they would have kept her in the hospital overnight. Nunez was subsequently arrested and charged with domestic violence and felonious assault.

{¶9} K.K.'s friend, Gale Sinopoli, testified that Nunez called her cell phone several times from jail because he wanted to speak with K.K., in violation of a no-contact order. According to Sinopoli, K.K. answered at least one of these phone calls and spoke with Nunez, who called from the jail under another inmate's name and personal identification number to avoid detection.

{¶10} Nunez testified at trial. He admitted that he instructed K.K. (1) not to sign a medical release for the Lakewood Hospital medical records; (2) not to appear for trial; (3) to refuse to testify pursuant to the Fifth Amendment; and (4) to testify that she had no

recollection of the events of January 26, 2016, because she was intoxicated. On cross-examination, Nunez testified that K.K.'s lack of memory and claim of intoxication or influence from pain medication all mirrored what Nunez had told K.K. to do at trial because Nunez did not want the jury hearing any of the statements or evidence. Tr. 402-403, 413-414. Nunez also admitted that he pleaded guilty to one count of domestic violence in Nevada in 2005 and one count of domestic violence with respect to the August 2015 assault. Despite these admissions, Nunez denied assaulting K.K. in January 2016. He claimed the victim had lied and that Nunez was elsewhere on the night in question.

{¶11} After considering all the evidence, the jury returned guilty verdicts on both counts. The parties agreed the counts were allied offenses of similar import that merged for purposes of sentencing. The state elected to proceed on the felonious assault charge, and the court sentenced Nunez to the maximum prison term of eight years. Nunez now appeals his conviction for felonious assault[1] claiming that (1) the evidence of the August 2015 domestic violence crime was inadmissible under Evid.R. 404(B), and (2) that his conviction for felonious assault is against the manifest weight of the evidence. Within the framework of the first assignment of error, Nunez also claims that the trial court erred by admitting (1) jail-house recorded phone conversations between Nunez and K.K., (2)

---

[1] In light of the fact that the domestic violence count merged with the felonious assault one, there is no final conviction for domestic violence. A conviction consists of both a finding of guilt and a sentence. *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23.

hearsay evidence within K.K.'s medical records, and (3) the victim's recorded recollection to police officers on the night of the assault. Neither assignment of error has merit.

{¶12} Before oral argument, Nunez filed a notice of supplemental authority seeking our consideration of *State v. Creech*, Slip Opinion No. 2016-Ohio-8440, in which it was concluded a trial court abuses its discretion by refusing a defendant's offer to stipulate to the fact of a prior conviction "*when the sole purpose* of the evidence is to prove the element of the defendant's prior conviction or indictment." (Emphasis added.) *Creech* at ¶ 40. The supplemental authority has no bearing on the arguments advanced in the assignments of error presented for our review, which focus on the applicability of Evid.R. 404(B) as a basis for admitting the other acts evidence. In *Old Chief v. United States*, 519 U.S. 172, 190, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), which supplied the rationale adopted in *Creech*, it was specifically noted that the "issue of substituting one statement for the other normally arises *only when* the record of conviction would not be admissible for any purpose beyond proving status, so that excluding it would not deprive the prosecution of evidence with multiple utility." (Emphasis added.) If the state is justified in admitting the evidence of prior acts on some issue other than status — for example, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident — Evid.R. 404(B) along with its federal counterpart "guarantees the opportunity to seek its admission." *Id.* We see no reason to adopt the proposition of law from *Old Chief* to the exclusion of the limitations noted therein.

**{¶13}** The purpose of the evidence demonstrating the past conduct in this case was not solely to prove status or the element of the defendant's prior conviction. The challenged evidence was useful for multiple purposes. The state introduced the other acts evidence under Evid.R. 404(B) for the express purpose of demonstrating modus operandi or identity. Tr. 139:4-19; state's notice of intent to introduce evidence of prior domestic violence conviction at trial, dated May 16, 2016. Nunez's reliance on *Creech* is misplaced and not in line with the arguments presented in his brief.

**{¶14}** Furthermore, even if *Creech* could apply, Nunez did not orally stipulate to the prior convictions when given the opportunity to do so. Tr. 139:4-19 (the state asked for a stipulation for the domestic violence count that was not provided). It was not until the state called its first witness that Nunez first attempted to "stipulate," but at that point the state was using the prior acts to prove identity or modus operandi, not for the purpose of proving his status. Tr. 138. The state most likely would have preferred Nunez to stipulate to being the person who attacked K.K., but the trial court correctly noted the nature of the evidence to which Nunez was attempting to stipulate and denied Nunez's request.

**{¶15}** The trial court did not err in admitting the evidence of the past conduct under Evid.R. 404(B). A trial court is vested with broad discretion to determine the admissibility of evidence, as long as that discretion is exercised in accordance with the rules of procedure and evidence. *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). We, therefore, will not disturb the trial court's decision to admit or exclude

evidence absent an abuse of discretion. An abuse of discretion connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 506, 589 N.E.2d 24 (1992).

{¶16} Nunez claims that the state presented surplus evidence of the prior convictions for the purpose of proving the domestic abuse charge. Under R.C. 2945.75(B), a certified copy of the final judgment entry in the prior conviction together with sufficient evidence of the identity of the defendant is sufficient. This is not the issue in this case. The state presented the evidence of the prior acts in order to prove that Nunez was the perpetrator of the latest crime, not to prove the prior convictions, although the prior convictions were an element of the offenses. As a further demonstration of this point, with respect to the Nevada domestic violence charge that was one of the two required prior convictions, the state limited the evidence to the fact of conviction. We need not address Nunez's argument under R.C. 2945.75(B). The sole issue is whether the evidence regarding the August 2015 domestic violence conviction was admissible under Evid.R. 404(B).

{¶17} Evid.R. 404(B) precludes the admission of evidence regarding a defendant's prior criminal acts when such evidence is offered to prove the defendant's character and that his actions were in conformity with that character. *State v. Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, ¶ 12. However, evidence of the defendant's prior criminal acts may be admissible for other purposes, such as to prove "motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *Herring*. Nunez has not presented any argument challenging the state's introduction of the August 2015 domestic violence evidence, used by the state in an attempt to prove the identity of the attacker in the 2016 incident. App.R. 16(A)(7). His sole claim is that the required Evid.R. 404(B) analysis was not provided. We disagree.

{¶18} In the state's pretrial notice of intent to use the prior conviction, Nunez was put on notice that the evidence was going to be introduced to prove identity. Before the first witness testified about the 2015 domestic violence conviction and the underlying facts, both the state and the trial court stated that the purpose was to prove Nunez was the person who caused K.K.'s 2016 injuries. His argument that the trial court failed to consider Evid.R. 404(B) is without merit.[2]

{¶19} In response, Nunez claims that even if the evidence of the prior conviction was permissible, the video evidence of the past assault was not proper impeachment evidence introduced through K.K.'s testimony because it was not "permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706." *See* Evid.R. 616(C). On the contrary, Evid.R. 613(C) permitted the state to present extrinsic evidence of prior inconsistent

---

[2] The fact that the state may have abandoned the theory in closing arguments does not affect the admissibility of evidence during trial. If anything, the self-limiting approach taken by the state, in asking the jury to not consider the prior crime for anything other than proving the elements of domestic violence instead of to prove the identity of K.K.'s attacker, benefitted Nunez. Regardless, closing arguments do not affect the admissibility of evidence during the state's case in chief.

conduct. Nunez has not addressed Evid.R. 613(C) or explained its inapplicability. App.R. 16(A)(7). We will not consider the summarily presented statement as an argument in favor of reversal.

{¶20} Finally, with regard to the remaining evidentiary issues advanced, Nunez claims that (1) the prior acts evidence was unduly prejudicial under Evid.R. 403; (2) K.K.'s medical records contained hearsay when she identified Nunez as the attacker to medical personal; (3) K.K.'s written statement to police officers regarding the 2016 assault was impermissible to be used to refresh the witness's recollection under Evid.R. 612, and the proper foundation for a recorded recollection under Evid.R. 803(5) was not laid before introducing the recording; (4) the jail-recorded conversations between K.K. and him were not admissible as extrinsic impeachment evidence under "Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706"; (5) the cumulative effect of the errors in the evidentiary rulings invalidated the trial result; and (6) the court failed to give a limiting instruction on the use of all of the above evidence because it could not be used as substantive evidence.

{¶21} We find no merit to any of those six claims because of the following:

1.   The prior acts evidence was not unduly prejudicial — Nunez testified at trial, and the prior conviction was going to be placed in front of the jury in one form or another; *State v. Brown*, 10th Dist. Franklin No. 15AP-935, 2016-Ohio-7944, ¶ 24 (prior conviction is admissible under Evid.R. 609(A) when a defendant testifies at trial in his own defense), and in light of the state's attempt to prove identity through the other acts evidence, we cannot find an abuse of discretion;

2.   The mere assertion of prejudice from a properly admitted medical record that contained hearsay identifying an assailant, but not by name, is not sufficient to demonstrate reversible error — *State v. Schultz*, 8th Dist. Cuyahoga Nos. 102306

and 102307, 2015-Ohio-3909, ¶ 27; *State v. Smith*, 8th Dist. Cuyahoga No. 90476, 2008-Ohio-5985 — and Nunez did not object to the introduction of the medical records, waiving all but plain error.  Tr. 336:17;

3.  The victim's unrecanted statement to police officers read into the record as a recorded recollection was proper because it was made at or near the date of the event when the matter was fresh in the witness's memory and reflected the witness's knowledge at the time of making the statement based on the witness's testimony.  Evid.R. 803(5); *State v. Fields*, 8th Dist. Cuyahoga No. 88916, 2007-Ohio-5060, ¶ 20 (signature on statement attests to the truth of the statement);

4.  Jail-recorded conversations are admissible to demonstrate a victim's credibility. *Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, at ¶ 11, citing *State v. Carter*, 8th Dist. Cuyahoga No. 90796, 2009-Ohio-226;

5.  The trial court did not abuse its discretion in admitting any of the evidence, and therefore, there is no error for the purposes of claiming cumulative error;

6.  Nunez waived any error with respect to the limiting instruction by failing to request any such instruction on the use of the evidence.  *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 191.

The first assignment of error is overruled.

**{¶22}** Finally, when reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction.  *Id.*

**{¶23}** We cannot conclude that a manifest miscarriage of justice occurred in this instance. Nunez largely relies on the evidentiary issues as the basis to demonstrate the jury lost its way. Having overruled the evidentiary arguments, we need not reconsider them. Further, Nunez's only argument is that he is more credible than K.K. because the only identification of Nunez as the attacker came from prior statements that K.K. had conveniently "forgotten" by the time of trial. Nunez, by his own admission, violated the no-contact order and enticed K.K. into "forgetting" about the incident, thereby causing the credibility issue he now relies on. Nevertheless, the jury was free to assess K.K.'s trial credibility from all the evidence presented, and in this case, we cannot conclude from the arguments presented that the jury lost its way. Importantly, K.K. did not recant her prior statements; she merely stated a lack of memory. Nunez's second assignment of error is overruled.

**{¶24}** We affirm.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, P.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION


EILEEN T. GALLAGHER, J., DISSENTING:

**{¶25}** I respectfully dissent from the majority's decision to affirm Nunez's convictions because I think the trial court should have excluded excess evidence of the August 27, 2015 domestic violence incident pursuant to Evid.R. 403(A). In my view, the surveillance video of the August 27, 2015 incident as well as the photographs of the injuries K.K. sustained as a result of that incident were of little to no probative value, were unfairly prejudicial, and deprived Nunez of a fair trial.

**{¶26}** Evid.R. 403 specifies the circumstances under which the trial court is required or permitted to exclude evidence. As relevant here, Evid.R. 403(A) provides that the trial court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Thus, even if evidence of a defendant's past conduct is relevant and admissible under Evid.R. 404(B), the court must nevertheless exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶27}** Nunez argued in his appellate brief that the state presented an overabundance of evidence regarding the August 27, 2015 domestic violence incident,

and that the piling on of the evidence offered no additional probative value and was "extremely prejudicial." (Appellant's Brief p. 4.) He supplemented his argument with additional authority provided in *State v. Creech*, Slip Opinion No. 2016-Ohio-8440. I disagree with the majority's conclusion that *Creech* is inapplicable to Nunez's arguments since *Creech* clarifies the analysis of Evid.R. 403, and Evid.R. 403 is "the threshold test of relevancy." *State v. Moore*, 8th Dist. Cuyahoga No. 93042, 2010-Ohio-518, ¶ 27.

**{¶28}** In *Creech*, the court explained that the probative value of the evidence is calculated by comparing it to evidentiary alternatives:

> Probative value is measured partially by the relative scarcity of evidence on the same issue. * * * That is, if the state offers evidence for which there is an evidentiary alternative that has substantially similar or greater probative value but is less prejudicial, the probative value of the state's evidence must be discounted. The danger of unfair prejudice is then weighed against this reduced probative value.

*Id.* at ¶ 22, citing *Old Chief v. United States*, 519 U.S. 172, 185, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). For purposes of proving a prior conviction, the court further explained that

> "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." * * * In terms of probative value, a stipulation and the official record are equal. So when weighing the probative against the prejudicial, the distinguishing characteristic between the two types of competing evidence is that one carries inherent risk and the other does not.

*Id.* at ¶ 30, quoting *Old Chief* at 191. The court in *Creech* concluded that the state's evidence, which established not only the name but also the nature of Creech's prior convictions, created a risk of unfair prejudice to him that warranted a reversal of his convictions. *Id.* at ¶ 36.

**{¶29}** Here, the state called Officer Raymond Halas ("Halas") of the Lakewood Police Department as its first witness. The state called Halas, who responded to the August 27, 2015 domestic violence incident, to identify photographs of the injuries K.K. sustained as a result of that incident. Defense counsel objected to the photographs, stating "[W]e are willing to stipulate." (Tr. 138.) Defense counsel also asserted that the photographs served no purpose but to "prejudice" the jury. (Tr. 138.) The trial court dismissed the objection, stating: "They don't have to accept your stipulation." (Tr. 138.)

**{¶30}** Although neither the state nor the court is required to accept a defendant's stipulation, the court must weigh the probative value of the evidence against the risk of unfair prejudice. Evid.R. 403. The state offered the photographs of the injuries K.K. sustained on August 27, 2015, as evidence of modus operandi to prove that Nunez caused K.K.'s injuries on January 24, 2016. (Tr. 139.) However, since Halas was the state's first witness, K.K. had not yet testified. Although there was some indication that K.K. would be a hostile witness, the state should have given her the opportunity to identify Nunez as the individual who assaulted her on January 24, 2016, before introducing highly prejudicial photographs of injuries from an unrelated incident.

**{¶31}** Moreover, both the state and the court were aware that the state was going to introduce recorded jail conversations in which Nunez instructed K.K. to claim she had no recollection of the January 24, 2016 assault because she was intoxicated. They also knew the state was going to introduce medical records from the hospital in which K.K.

identified Nunez as her attacker. These evidentiary alternatives to the photographs were sufficient to identify Nunez as the perpetrator who caused her injuries on January 24, 2016. The photographs were not necessary to prove Nunez's identity. Therefore, under the analysis described in *Creech*, they contained no probative value and served only to inflame the jury.

{¶32} The state also called Detective Donald Mladek ("Mladek") for the purpose of playing the surveillance video of the August 27, 2015 assault for the jury. But again, Nunez was not on trial for the August 27, 2015 domestic violence incident. Indeed, he pleaded guilty to that offense, and Mladek testified to that fact. (Tr. 288.) Yet, the surveillance video shows Nunez throwing K.K., who was visibly pregnant at the time, into a door jam in the lobby of the Marine Towers apartment building. Again, defense counsel made a timely objection to the video:

> My objection is that this has nothing to do with this case. * * * They don't have to show how the incident happened, what happened. As far as I'm concerned, it's already been established what they have to establish as part of this cause action.

(Tr. 291.)

{¶33} The state argued the surveillance video was necessary to establish that K.K. mischaracterized the August 27, 2015 incident as an accident instead of an intentional act of violence. (Tr. 292.) In other words, the state introduced the surveillance video to impeach K.K.'s credibility. However, K.K. initially admitted that the August 27, 2015 incident was an intentional assault, but subsequently changed her testimony. Her inconsistent testimony, by itself, cast doubt on her credibility.

{¶34} Furthermore, the state sufficiently discredited K.K.'s testimony by playing the recorded jail-phone conversations for the jury and reading K.K.'s prior written statement to police. Indeed, K.K. followed the instructions Nunez gave her in the recording and testified that she had no memory of the January 24, 2016 assault because she was intoxicated. K.K.'s prior written statement to police also contradicted her trial testimony, while also explaining how Nunez caused her injuries.

{¶35} Moreover, Nunez's identity as the perpetrator was further established by the emergency room physician and physician's assistant who tended to K.K.'s injuries on January 24, 2016. They testified that K.K. identified Nunez as the individual who caused her injuries and that she was not intoxicated on the night of the January 24, 2016 assault.

{¶36} Thus, the surveillance video was not necessary to impeach K.K.'s credibility. Nor was it necessary to establish the fact of Nunez's prior domestic violence conviction that resulted from that incident. Detective Mladek testified that during the course of his investigation, he discovered that Nunez had two prior domestic violence convictions, including one in which Nunez pleaded guilty to domestic violence in Lakewood, Ohio in October 2015. Mladek authenticated the journal entries of conviction and they were admitted into evidence.

{¶37} In light of the many evidentiary alternatives offered to impeach K.K.'s credibility and to establish the fact of Nunez's prior conviction, the surveillance video and photographs of K.K.'s injuries on August 27, 2015, offered no probative value, but carried an extreme risk of unfair prejudice. In accordance with *Creech* and the mandate set forth in Evid.R. 403(A), I would find the unfair prejudice caused by this evidence was substantial enough to deprive Nunez of a fair trial.