[Cite as *State v. Wright*, 2014-Ohio-1073.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100010**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DERRICK ALFONZO WRIGHT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-570665

**BEFORE:** Celebrezze, P.J., Keough, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
940 Leader Building
526 Superior Avenue
Cleveland, Ohio   44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Aleksandra Chojnacki
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendant-appellant, Derrick Alfonzo Wright, appeals from his conviction for menacing by stalking. After a careful review of the record and relevant case law, we affirm appellant's conviction.

## I.  Procedural History

{¶2} On February 7, 2013, a three-count indictment was filed against appellant, charging him with having a weapon while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree; carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and menacing by stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree.

{¶3} At his arraignment, appellant entered pleas of not guilty, and the case proceeded to a jury trial on May 29, 2013. On May 30, 2013, the jury returned a verdict of not guilty as to the counts of having a weapon while under disability and carrying a concealed weapon. However, the jury found appellant guilty of menacing by stalking. On May 31, 2013, the trial court sentenced appellant to an 18-month term of imprisonment.

## II.  Substantive Facts

{¶4} Lashawn Pate, a bus driver for the Greater Cleveland Regional Transit Authority ("RTA"), testified that in August 2012, she was assigned to the Health Line, which travels through downtown Cleveland, Ohio. Pate testified that a passenger, later identified as appellant, begin riding her bus sometime between August and September

2012. During one bus ride in September 2012, appellant began complimenting Pate about her hair and fragrance. During the conversation, appellant asked Pate to give him a call, and she responded that she was not interested. Pate stated that, following that incident, appellant began taking the bus every day.

{¶5} Appellant's advances towards Pate culminated during an incident in November 2012 when he boarded the bus ranting aggressively. Among other things, appellant stated, "these mother fuckers are trying to kill me, * * * they can't take down the beast." Soon appellant's statements turned religious and he began telling Pate he was "the Messiah." Further, appellant told Pate that she was the eastern star and the devil and that she should "repent at Jesus's knee." Appellant asked Pate if she believed in God, and when she responded affirmatively, he told her that she was not a believer. At that point, appellant pressed his body against Pate and stated, "[w]ell since you believe in God, let me ask you, what would you do if I shot you in your head?" Pate responded that she would not die because she is a child of God. In turn, appellant stated, "[g]ood answer, because had you told me that you was going to die, you would have died today." Pate testified that at some point during this conversation, appellant had unzipped his jacket and pulled it back in a way that revealed he was carrying a gun.

{¶6} Pate testified that moments after appellant's threat, he grabbed her right arm and told her she was coming with him. When she responded that she would not leave the bus, appellant stated, "No. Come on, you are coming with me." During appellant's incessant demands that Pate leave the bus, he revealed that he had been "watching her."

Appellant stated that he knew when she goes to work, when she leaves, and where she parks her car. Ultimately, appellant left the bus. However, before exiting he stated, "I'm going to get you. You mine."

{¶7} Pate testified that the incident terrified her and that she immediately made an incident report and switched bus routes in an effort to avoid appellant. Nevertheless, in January 2013, while picking up passengers on Euclid Avenue, appellant saw Pate and stated, "There's my baby. I've been looking for you. I haven't seen you. I've been riding all these buses looking for you and I finally found you." Following this conversation, Pate made a second incident report.

{¶8} Concerned for her safety, Transit Police began to ride with Pate on her route. Pate testified that she only noticed appellant one time while RTA Detective Narayan Stitt was riding with her. She stated that on that occasion, appellant spoke to her while boarding, stating, "Hey baby, how are you doing? I missed you." Pate testified that, as a result of her previous interactions with appellant, she was worried he wanted to do her harm. She was afraid he might kill her.

{¶9} Officer Clay Saylor of the RTA Police testified that he took an incident report from Pate on November 18, 2012. He stated that Pate appeared "distraught, upset, almost in tears."

{¶10} Officer Jared Shelley of the RTA Police testified that on January 2, 2013, he responded to a call regarding the harassment of an RTA operator. He stated that he and his partner spoke with Pate and had her fill out a statement documenting the incident.

Officer Shelley noted that Pate seemed uneasy and nervous and that her hands were shaking.

{¶11} The state also presented testimony from RTA Detective Narayan Stitt. Det. Stitt testified that he was assigned the case on January 3, 2013, and reviewed both incident reports involving appellant. He testified that, as a result of the information in the reports, he made arrangements to ride with Pate on January 4, 2013. Det. Stitt stated that he encountered appellant the first day he rode the bus. According to Det. Stitt, Pate's demeanor changed immediately when appellant boarded the bus. Det. Stitt stated that he heard appellant tell Pate, "Yeah, yeah. I told you. Yeah, you don't listen. Yeah, yeah. What did I tell you? What did I tell you? You don't listen." Det. Stitt stated that Pate became shaken and seemed nervous and uneasy.

{¶12} When appellant exited the bus, Det. Stitt questioned him about his relationship with Pate. In response, appellant answered, "Yes, I know her. She is my friend." When asked whether he ever did anything to make Pate feel uncomfortable, appellant stated, "No. Never said anything to her. Never told that bitch I would kill her." Det. Stitt explained that appellant's response was unprompted.

{¶13} Det. Stitt further testified about the surveillance video that depicted appellant during the November 2012 incident. While reviewing the video in court, Det. Stitt noted that appellant appeared to have a large, weighted object in his left pocket that seemed to have two square angles. Det. Stitt testified that the object appeared to be the

handle of a gun.   Det. Stitt also testified that he heard Pate state to appellant in the video, "[w]hy did you say you want to shoot me in the head?"

{¶14} Finally, appellant testified on his own behalf.   He admitted that it was him in the surveillance video.   However, he stated that his intent was just to talk to Pate and to "knock on a girlfriend."   Appellant admitted to drinking prior to the November 2012 incident and telling Pate that he served 16 years in prison for a crime he committed. Further, appellant admitted to speaking to Pate while she was driving the second bus route.   However, appellant denied any allegation that he was ever aggressive towards Pate or threatened to cause her harm in any way.

{¶15} Appellant now brings this timely appeal, raising two assignments of error for review.

### III. Law and Analysis

{¶16} In his first assignment of error, appellant argues that the trial court erred in denying his motion for acquittal as to his menacing by stalking charge based on the state's failure to present sufficient evidence to sustain a conviction. In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence.   Because appellant's first and second assignments of error raise similar arguments, we consider them together.

{¶17} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence review require the same analysis.   *State v.*

*Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241, ¶ 18, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶18}** A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). On review for sufficiency, courts are to assess not whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.*

**{¶19}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 17, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** Even when there is sufficient evidence to support the verdict, a court of appeals may decide that the verdict is against the weight of the evidence. *Thompkins* at paragraph two of the syllabus. When reviewing a manifest weight challenge, we must consider whether the evidence in the case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, the weight of the evidence, and the credibility of the witnesses to determine if the jury clearly "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1st Dist.1983), and *State v. Smith*, 80 Ohio St.3d 89, 114, 684 N.E.2d 668 (1997).

**{¶21}** In the instant case, appellant was convicted of menacing by stalking in violation of R.C. 2903.211(A)(1), which provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." The "state need only show that a defendant knowingly caused the victim to believe that he would cause her mental distress or physical harm." *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 31. Therefore, "neither actual physical harm nor actual mental distress is required." *Id.*, quoting *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 45, 47.

**{¶22}** In challenging the evidence supporting his conviction, appellant argues that the state failed to establish a "pattern of conduct." Pursuant to R.C. 2903.211(D)(1), a "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." In determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly threatening. *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.).

**{¶23}** In the case at hand, appellant's conviction stemmed from three interactions with Pate from November 2012 to January 2013. On the first occasion in late November

2012, appellant referenced shooting Pate in the head while he revealed what Pate perceived to be a firearm under his jacket. Further, appellant attempted to take her off the bus and stated that he had extensive knowledge of her work schedule, had been watching her, and was going to "get" her.

{¶24} Following this initial incident, appellant continued to approach Pate in January 2013. Pate testified that on two separate occasions in January 2013, appellant made threatening references to his growing dissatisfaction with her repeated rejection of his advancements. During these conversations, appellant stated that he had been looking for Pate after she switched bus routes and that he loved and missed her. At trial, Pate testified that, in light of appellant's initial threat to shoot her in November 2012, these subsequent interactions with him terrified her and caused her to believe he wanted to do her harm or might kill her.

{¶25} Based on the foregoing testimony, we find the state presented sufficient evidence that, on at least three occasions, appellant knowingly engaged in conduct that caused Pate to believe he would cause her physical harm and did cause her mental distress. While appellant argues that the second and third interactions amounted to nothing more than aggressive flirtation, his contention ignores his statements that demonstrated his growing frustration with Pate and indicated that he had been searching for her since November 2012. Moreover, appellant's position ignores how a reasonable person would react to such comments in light of his previous threat to shoot Pate in the head and his attempt to forcefully remove her from the RTA bus.

{¶26} With respect to the time period between each of the complained-of incidents, we find that, under the circumstances presented herein, the state presented sufficient evidence to establish that they were "closely related in time." The testimony established that the incidents leading to appellant's arrest occurred over an approximately six-week period of time. *See State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334 (finding a pattern of conduct where several incidents occurred over a several month period). Moreover, the only reason there was a gap in time between the first and second incidents was because Pate switched bus routes, and it took appellant several weeks to "find" her. Accordingly, we find the state sufficiently established appellant's "pattern of conduct."

{¶27} Based on the foregoing, we find that a rational jury could have found, beyond a reasonable doubt, that appellant, by engaging in a pattern of conduct, knowingly caused Pate to believe he would cause her physical harm and did cause her mental distress. Thus, the trial court did not err in denying appellant's motion for acquittal.

{¶28} Moreover, we cannot say that appellant's conviction was against the manifest weight of the evidence. While appellant contends that the state failed to present any evidence to corroborate Pate's testimony concerning his threats, we are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, the jury was in the best position to weigh the credibility of Pate's testimony and was free to place significant weight on her

testimony that appellant's obsessive and aggressive pattern of conduct caused her to believe he would cause her physical harm and did cause her mental distress. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction or that a manifest miscarriage of justice has occurred.

{¶29} Appellant's first and second assignments of error are overruled.

{¶30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

EILEEN A. GALLAGHER, J., DISSENTING:

{¶31} I respectfully dissent from my learned colleagues. I would hold that the state failed to present sufficient evidence to establish the charge of menacing by stalking. I find the separate incidents in this case to be too remote in time to establish a pattern of

conduct pursuant to R.C. 2903.211(D)(1). Furthermore, aside from the November 2012 incident, the record contains no other threatening conduct on the part of the appellant. Appellant's statements during subsequent encounters such as, "I love you. I miss you," were insufficient, in my view, to establish the state's burden under R.C. 2903.211(A)(1). Therefore, I would reverse appellant's conviction.