SEAN C. GALLAGHER, J.:
 

 {¶ 1} Emilio Nunez, Jr., appeals his felonious assault conviction. Nunez was sentenced to an eight-year term of imprisonment, but does not challenge his sentence, only the finding of guilt. We affirm.
 

 {¶ 2} Nunez was charged in a two-count indictment with one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of domestic violence, in violation of R.C. 2919.25(A). The domestic violence count alleged that Nunez had two prior domestic violence convictions that elevated the charge from a first-degree misdemeanor to a third-degree felony.
 

 {¶ 3} Nunez had a long-standing relationship with K.K., who became pregnant
 during their relationship. One of the prior domestic violence incidents happened in August 2015, when K.K. was eight months pregnant. Lakewood police officers responded to a report of a domestic dispute. K.K. was found outside the apartment building with her belongings and a bruise under her left eye, and was visibly distraught. She told the officers she had been arguing with the father of her unborn baby. A surveillance video of the incident, played for the jury in the instant case, depicts the prior assault. Photographs of K.K.'s injuries at the time of the 2015 assault were also admitted into evidence. On cross-examination, Nunez admitted that he threw K.K. into the door "intentionally," and that he pleaded guilty to one count of domestic violence as a result of the prior incident. Tr. 372, 392.
 

 {¶ 4} The incident giving rise to this case occurred in January 2016. At that time, K.K. was subleasing an apartment from Matthew Allen because she needed a place to stay. Sarah Brandenburg, the victim's friend, testified that on the evening of January 24, 2016, she and Nunez went to visit K.K. at her apartment. K.K. appeared weak and had a blackened right eye from another incident that occurred between K.K. and another person weeks earlier. K.K. asked them to leave almost immediately, and when Nunez refused, K.K. chased him from the room, striking his back multiple times.
 

 {¶ 5} Later that night, Allen called the Lakewood police for assistance in removing K.K. from the apartment because he learned some disturbing information about K.K. and he wanted her out of the apartment. One of the officers observed that K.K. had an old bruise on her right eye and some old scrapes and bruises on her arm that showed signs of healing. Tr. 189.
 

 {¶ 6} Two hours later, Lakewood police received a call from a nearby Walgreens store at the corner of Detroit Avenue and West 117th Street in Lakewood, Ohio, concerning a woman who had been assaulted. In the 911 call, which was played for the jury and made part of the record, K.K. told the dispatcher that she had been assaulted by her boyfriend, Nunez, twice in the last 24 hours, and that they had a prior domestic violence case together. The 911 recording was played for the jury, and K.K. confirmed it was her voice.
 

 {¶ 7} The same officers from earlier in the evening responded to the Walgreens store and spoke with K.K., who had obviously sustained new injuries, including additional swelling and redness around her eye. An ambulance transported K.K. to Lakewood Hospital where she was diagnosed with a broken nose, multiple rib fractures, and a contused sacrum. She told a nurse and physician's assistant in the emergency room that her "boyfriend" had beaten her that day, as well as the day before. K.K., in a written statement for police officers, indicated Nunez had beaten her and caused her injuries. Tr. 246-250.
 

 {¶ 8} K.K. testified that she did not remember calling 911 or making a written statement for police because she was intoxicated and on prescription medication at that time. However, the attending physician and physician's assistant testified that if K.K. had been intoxicated, they would have noticed and documented that fact in K.K.'s chart. They also testified that if K.K. was grossly intoxicated, they would have kept her in the hospital overnight. Nunez was subsequently arrested and charged with domestic violence and felonious assault.
 

 {¶ 9} K.K.'s friend, Gale Sinopoli, testified that Nunez called her cell phone several times from jail because he wanted to speak with K.K., in violation of a no-contact order. According to Sinopoli, K.K. answered at least one of these phone calls
 and spoke with Nunez, who called from the jail under another inmate's name and personal identification number to avoid detection.
 

 {¶ 10} Nunez testified at trial. He admitted that he instructed K.K. (1) not to sign a medical release for the Lakewood Hospital medical records; (2) not to appear for trial; (3) to refuse to testify pursuant to the Fifth Amendment; and (4) to testify that she had no recollection of the events of January 26, 2016, because she was intoxicated. On cross-examination, Nunez testified that K.K.'s lack of memory and claim of intoxication or influence from pain medication all mirrored what Nunez had told K.K. to do at trial because Nunez did not want the jury hearing any of the statements or evidence. Tr. 402-403, 413-414. Nunez also admitted that he pleaded guilty to one count of domestic violence in Nevada in 2005 and one count of domestic violence with respect to the August 2015 assault. Despite these admissions, Nunez denied assaulting K.K. in January 2016. He claimed the victim had lied and that Nunez was elsewhere on the night in question.
 

 {¶ 11} After considering all the evidence, the jury returned guilty verdicts on both counts. The parties agreed the counts were allied offenses of similar import that merged for purposes of sentencing. The state elected to proceed on the felonious assault charge, and the court sentenced Nunez to the maximum prison term of eight years. Nunez now appeals his conviction for felonious assault
 
 [1]
 
 claiming that (1) the evidence of the August 2015 domestic violence crime was inadmissible under Evid.R. 404(B), and (2) that his conviction for felonious assault is against the manifest weight of the evidence. Within the framework of the first assignment of error, Nunez also claims that the trial court erred by admitting (1) jail-house recorded phone conversations between Nunez and K.K., (2) hearsay evidence within K.K.'s medical records, and (3) the victim's recorded recollection to police officers on the night of the assault. Neither assignment of error has merit.
 

 {¶ 12} Before oral argument, Nunez filed a notice of supplemental authority seeking our consideration of
 
 State v. Creech
 
 ,
 
 150 Ohio St.3d 540
 
 ,
 
 2016-Ohio-8440
 
 ,
 
 84 N.E.3d 981
 
 , in which it was concluded a trial court abuses its discretion by refusing a defendant's offer to stipulate to the fact of a prior conviction "
 
 when the sole purpose
 
 of the evidence is to prove the element of the defendant's prior conviction or indictment." (Emphasis added.)
 
 Creech
 
 at ¶ 40. The supplemental authority has no bearing on the arguments advanced in the assignments of error presented for our review, which focus on the applicability of Evid.R. 404(B) as a basis for admitting the other acts evidence. In
 
 Old Chief v. United States
 
 ,
 
 519 U.S. 172
 
 , 190,
 
 117 S.Ct. 644
 
 ,
 
 136 L.Ed.2d 574
 
 (1997), which supplied the rationale adopted in
 
 Creech
 
 , it was specifically noted that the "issue of substituting one statement for the other normally arises
 
 only when
 
 the record of conviction would not be admissible for any purpose beyond proving status, so that excluding it would not deprive the prosecution of evidence with multiple utility." (Emphasis added.) If the state is justified in admitting the evidence of prior acts on some issue other than status-for example, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
 mistake or accident- Evid.R. 404(B) along with its federal counterpart "guarantees the opportunity to seek its admission."
 

 Id.
 

 We see no reason to adopt the proposition of law from
 
 Old Chief
 
 to the exclusion of the limitations noted therein.
 

 {¶ 13} The purpose of the evidence demonstrating the past conduct in this case was not solely to prove status or the element of the defendant's prior conviction. The challenged evidence was useful for multiple purposes. The state introduced the other acts evidence under Evid.R. 404(B) for the express purpose of demonstrating modus operandi or identity. Tr. 139:4-19; state's notice of intent to introduce evidence of prior domestic violence conviction at trial, dated May 16, 2016. Nunez's reliance on
 
 Creech
 
 is misplaced and not in line with the arguments presented in his brief.
 

 {¶ 14} Furthermore, even if
 
 Creech
 
 could apply, Nunez did not orally stipulate to the prior convictions when given the opportunity to do so. Tr. 139:4-19 (the state asked for a stipulation for the domestic violence count that was not provided). It was not until the state called its first witness that Nunez first attempted to "stipulate," but at that point the state was using the prior acts to prove identity or modus operandi, not for the purpose of proving his status. Tr. 138. The state most likely would have preferred Nunez to stipulate to being the person who attacked K.K., but the trial court correctly noted the nature of the evidence to which Nunez was attempting to stipulate and denied Nunez's request.
 

 {¶ 15} The trial court did not err in admitting the evidence of the past conduct under Evid.R. 404(B). A trial court is vested with broad discretion to determine the admissibility of evidence, as long as that discretion is exercised in accordance with the rules of procedure and evidence.
 
 Rigby v. Lake Cty.,
 

 58 Ohio St.3d 269
 
 , 271,
 
 569 N.E.2d 1056
 
 (1991). We, therefore, will not disturb the trial court's decision to admit or exclude evidence absent an abuse of discretion. An abuse of discretion connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.
 
 Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.
 
 ,
 
 63 Ohio St.3d 498
 
 , 506,
 
 589 N.E.2d 24
 
 (1992).
 

 {¶ 16} Nunez claims that the state presented surplus evidence of the prior convictions for the purpose of proving the domestic abuse charge. Under R.C. 2945.75(B), a certified copy of the final judgment entry in the prior conviction together with sufficient evidence of the identity of the defendant is sufficient. This is not the issue in this case. The state presented the evidence of the prior acts in order to prove that Nunez was the perpetrator of the latest crime, not to prove the prior convictions, although the prior convictions were an element of the offenses. As a further demonstration of this point, with respect to the Nevada domestic violence charge that was one of the two required prior convictions, the state limited the evidence to the fact of conviction. We need not address Nunez's argument under R.C. 2945.75(B). The sole issue is whether the evidence regarding the August 2015 domestic violence conviction was admissible under Evid.R. 404(B).
 

 {¶ 17} Evid.R. 404(B) precludes the admission of evidence regarding a defendant's prior criminal acts when such evidence is offered to prove the defendant's character and that his actions were in conformity with that character.
 
 State v. Herring
 
 ,
 
 2017-Ohio-743
 
 ,
 
 86 N.E.3d 133
 
 , ¶ 12. However, evidence of the defendant's prior criminal acts may be admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge,
 identity, or absence of mistake or accident." Evid.R. 404(B) ;
 
 Herring
 
 . Nunez has not presented any argument challenging the state's introduction of the August 2015 domestic violence evidence, used by the state in an attempt to prove the identity of the attacker in the 2016 incident. App.R. 16(A)(7). His sole claim is that the required Evid.R. 404(B) analysis was not provided. We disagree.
 

 {¶ 18} In the state's pretrial notice of intent to use the prior conviction, Nunez was put on notice that the evidence was going to be introduced to prove identity. Before the first witness testified about the 2015 domestic violence conviction and the underlying facts, both the state and the trial court stated that the purpose was to prove Nunez was the person who caused K.K.'s 2016 injuries. His argument that the trial court failed to consider Evid.R. 404(B) is without merit.
 
 [2]
 

 {¶ 19} In response, Nunez claims that even if the evidence of the prior conviction was permissible, the video evidence of the past assault was not proper impeachment evidence introduced through K.K.'s testimony because it was not "permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706."
 
 See
 
 Evid.R. 616(C). On the contrary, Evid.R. 613(C) permitted the state to present extrinsic evidence of prior inconsistent conduct. Nunez has not addressed Evid.R. 613(C) or explained its inapplicability. App.R. 16(A)(7). We will not consider the summarily presented statement as an argument in favor of reversal.
 

 {¶ 20} Finally, with regard to the remaining evidentiary issues advanced, Nunez claims that (1) the prior acts evidence was unduly prejudicial under Evid.R. 403 ; (2) K.K.'s medical records contained hearsay when she identified Nunez as the attacker to medical personal; (3) K.K.'s written statement to police officers regarding the 2016 assault was impermissible to be used to refresh the witness's recollection under Evid.R. 612, and the proper foundation for a recorded recollection under Evid.R. 803(5) was not laid before introducing the recording; (4) the jail-recorded conversations between K.K. and him were not admissible as extrinsic impeachment evidence under " Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706"; (5) the cumulative effect of the errors in the evidentiary rulings invalidated the trial result; and (6) the court failed to give a limiting instruction on the use of all of the above evidence because it could not be used as substantive evidence.
 

 {¶ 21} We find no merit to any of those six claims because of the following:
 

 1. The prior acts evidence was not unduly prejudicial-Nunez testified at trial, and the prior conviction was going to be placed in front of the jury in one form or another;
 
 State v. Brown
 
 , 10th Dist. Franklin No. 15AP-935,
 
 2016-Ohio-7944
 
 ,
 
 2016 WL 6994228
 
 , ¶ 24 (prior conviction is admissible under Evid.R. 609(A) when a defendant testifies at trial in his own defense), and in light of the state's attempt to prove identity through the other acts evidence, we cannot find an abuse of discretion;
 

 2. The mere assertion of prejudice from a properly admitted medical record
 that contained hearsay identifying an assailant, but not by name, is not sufficient to demonstrate reversible error-
 
 State v. Schultz
 
 , 8th Dist. Cuyahoga Nos. 102306 and 102307,
 
 2015-Ohio-3909
 
 ,
 
 2015 WL 5608528
 
 , ¶ 27 ;
 
 State v. Smith
 
 , 8th Dist. Cuyahoga No. 90476,
 
 2008-Ohio-5985
 
 ,
 
 2008 WL 4951646
 
 -and Nunez did not object to the introduction of the medical records, waiving all but plain error. Tr. 336:17;
 

 3. The victim's unrecanted statement to police officers read into the record as a recorded recollection was proper because it was made at or near the date of the event when the matter was fresh in the witness's memory and reflected the witness's knowledge at the time of making the statement based on the witness's testimony. Evid.R. 803(5) ;
 
 State v. Fields
 
 , 8th Dist. Cuyahoga No. 88916,
 
 2007-Ohio-5060
 
 ,
 
 2007 WL 2793331
 
 , ¶ 20 (signature on statement attests to the truth of the statement);
 

 4. Jail-recorded conversations are admissible to demonstrate a victim's credibility.
 
 Herring
 
 ,
 
 2017-Ohio-743
 
 ,
 
 86 N.E.3d 133
 
 , at ¶ 11, citing
 
 State v. Carter
 
 , 8th Dist. Cuyahoga No. 90796,
 
 2009-Ohio-226
 
 ,
 
 2009 WL 147386
 
 ;
 

 5. The trial court did not abuse its discretion in admitting any of the evidence, and therefore, there is no error for the purposes of claiming cumulative error;
 

 6. Nunez waived any error with respect to the limiting instruction by failing to request any such instruction on the use of the evidence.
 
 State v. Dean
 
 ,
 
 146 Ohio St.3d 106
 
 ,
 
 2015-Ohio-4347
 
 ,
 
 54 N.E.3d 80
 
 , ¶ 191.
 

 The first assignment of error is overruled.
 

 {¶ 22} Finally, when reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 
 State v. Thompkins
 
 ,
 
 78 Ohio St.3d 380
 
 , 387,
 
 678 N.E.2d 541
 
 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction.
 

 Id.
 

 {¶ 23} We cannot conclude that a manifest miscarriage of justice occurred in this instance. Nunez largely relies on the evidentiary issues as the basis to demonstrate the jury lost its way. Having overruled the evidentiary arguments, we need not reconsider them. Further, Nunez's only argument is that he is more credible than K.K. because the only identification of Nunez as the attacker came from prior statements that K.K. had conveniently "forgotten" by the time of trial. Nunez, by his own admission, violated the no-contact order and enticed K.K. into "forgetting" about the incident, thereby causing the credibility issue he now relies on. Nevertheless, the jury was free to assess K.K.'s trial credibility from all the evidence presented, and in this case, we cannot conclude from the arguments presented that the jury lost its way. Importantly, K.K. did not recant her prior statements; she merely stated a lack of memory. Nunez's second assignment of error is overruled.
 

 {¶ 24} We affirm.
 

 TIM McCORMACK, P.J., CONCURS;
 

 EILEEN T. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION
 

 In light of the fact that the domestic violence count merged with the felonious assault one, there is no final conviction for domestic violence. A conviction consists of both a finding of guilt and a sentence.
 
 State v. Worley
 
 , 8th Dist. Cuyahoga No. 103105,
 
 2016-Ohio-2722
 
 ,
 
 2016 WL 1705659
 
 , ¶ 23.
 

 The fact that the state may have abandoned the theory in closing arguments does not affect the admissibility of evidence during trial. If anything, the self-limiting approach taken by the state, in asking the jury to not consider the prior crime for anything other than proving the elements of domestic violence instead of to prove the identity of K.K.'s attacker, benefitted Nunez. Regardless, closing arguments do not affect the admissibility of evidence during the state's case in chief.