[Cite as *State v. Williams*, 2019-Ohio-2323.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 107133

    v.                                 :

ANGELO WILLIAMS                        :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622706-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brad Meyer, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Angelo Williams ("Williams") appeals his guilty verdict and sentence and asks this court to vacate his convictions. After a review of the record, we affirm.

{¶ 2}   Williams was convicted of trespass in a habitation when a person is present or likely to be present, a fourth-degree felony in violation of R.C. 2911.12(B); menacing by stalking, a fourth-degree felony in violation of R.C. 2903.211(A)(1), with a specification alleging a prior conviction; aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21(A); and criminal damaging, a second-degree misdemeanor in violation of R.C. 2909.06(A)(1).   Williams was sentenced to 17 months on Counts 1 and 2, six months on Count 3, and 90 days on Count 4, to be served concurrently for a total of 17 months in prison.   The trial court also waived court costs and awarded Williams 178 days of jail-time credit.

I.     **Facts and Procedural History**

{¶ 3}   On the night of September 30, 2017, Joie Graham ("Graham") was spending the night at the home of Yarnell Brown ("Brown").   Along with Graham and Brown, Tony Foreman ("Foreman") and three other people were sleeping at the home.   Graham and Foreman slept in the living room, while Brown, Brown's partner, and Graham's two children slept on the second floor.   During the night, Graham and Foreman were awakened by what sounded like someone trying to get into the home through the front door.   Graham thought it was the wind, and both went back to sleep.   A few moments later, Graham was awakened again by a noise coming from upstairs.   Shortly thereafter, she saw someone peek around a doorway across the room.   Graham walked towards the doorway and discovered Williams in the house.   At the time, Graham did not know how Williams entered the house.   Williams ordered Graham to "get your a** on the couch."   (Tr. 146.)   Graham sat on

the couch, and Foreman woke up due to the commotion. When Williams realized that Foreman was present, he exited the home out the front door, ran down the street, jumped on his bicycle, and rode away.

{¶ 4} The next morning, Graham observed damage to the screen door from the upstairs bathroom to the balcony. The screen door was cut, and the interior door was pulled away from the frame near the lock. There was no known damage to the door prior to everyone going to sleep the night before.

{¶ 5} Prior to this incident, Graham and Williams were in a romantic relationship that began around 2010. At the time of this incident, Graham was involved in a relationship with Foreman. Graham testified that during the time she was romantically involved with Williams, he was physically abusive and would stalk her. Graham, a postal carrier, testified that Williams would follow her on her mail route and threatened to harm her and her dog. In 2016, Williams pleaded guilty to cruelty to animals, attempted burglary, and menacing by stalking. Graham and her dog were the victims. Williams's defense counsel stipulated to the authenticity of the state's journal entry of the 2016 conviction but filed a motion in limine regarding other acts and prior convictions. The trial court denied the motion in limine. Graham then testified regarding several instances when Williams physically abused her, but she did not notify the police. The defense objected, and the trial court overruled those objections.

{¶ 6} At the end of the trial, the jury found Williams guilty. Williams filed this timely appeal assigning three errors for our review:

I. The trial court erred by denying appellant's motion in limine and allowing the state to introduce hearsay and other acts evidence in violation of Evid.R. 401, 402, 403, and 404(b) and appellant's constitutional rights to due process, a fair trial and Sixth Amendment right to confront witnesses;

II. Appellant's convictions were not supported by sufficient evidence, and the trial court erred by denying his motion for acquittal; and

III. The convictions were against the manifest weight of the evidence.

## II. Hearsay and Other Acts Evidence

### A. Standard of Review

{¶ 7} Accordingly,

[w]e review motions in limine on an abuse of discretion standard. *Mayfield v. Cuccarese*, 8th Dist. Cuyahoga No. 89594, 2008-Ohio-1812, ¶ 29. In general, the decision whether to admit or exclude relevant evidence lies within the discretion of the trial court. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An appellate court will not reverse that decision absent an abuse of discretion and a showing of prejudice. *Id. Cohen & Co. v. Breen*, 8th Dist. Cuyahoga No. 100775, 2014-Ohio-3915, ¶ 18.

### B. Whether the Trial Court Erred by Denying Appellant's Motion in Limine and Overruling the Defense Objections by Admitting Other Acts Evidence and Irrelevant Evidence

{¶ 8} Williams argues that the trial court erred by allowing Graham's testimony that Williams continuously stalked her because the incidents were too remote in time, and that a pattern of conduct had not been established. Williams contends that by allowing the jury to hear testimony that referred to events where a time frame was not identified, he was unfairly prejudiced.

Evid.R. 404(B) precludes the admission of evidence regarding a defendant's prior criminal acts when such evidence is offered to prove the defendant's character and that his actions were in conformity with that character. *State v. Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, ¶ 12. However, evidence of the defendant's prior criminal acts may be admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

*State v. Nunez*, 2017-Ohio-4295, 92 N.E.3d 294, ¶ 17 (8th Dist.).

{¶ 9} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 19, the court stated that,

[e]vidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B) — to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident — and in considering other acts evidence, trial courts should conduct a three-step analysis.

{¶ 10} Under the three-step analysis, first the trial court had to "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401." *Id.* at ¶ 20. Second, the trial court had to "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the trial court had to "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403." *Id.*

**{¶ 11}** The state contends that the testimony was offered to demonstrate a pattern of conduct by Williams as a necessary element to establish that Williams stalked Graham. "Menacing by stalking is governed by R.C. 2903.211(A)(1), and provides that '[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.'" *State v. Hersh*, 2012-Ohio-3807, 974 N.E.2d 161, ¶ 16 (8th Dist.). R.C. 2903.211(D)(1) states that "a pattern of conduct means two or more actions or incidents closely related in time."

**{¶ 12}** Williams contends that the state failed to establish a pattern of conduct, or that the events were closely related in time, and thus the testimonies regarding his prior behavior is inadmissible hearsay. However,

> R.C. 2903.211 does not specifically state what constitutes incidents "closely related in time." Thus, whether incidents should be deemed closely related in time should be resolved by the trier of fact "'considering the evidence in the context of all the circumstances of the case.'" *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003 (12th Dist.), ¶ 10, quoting *State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002-Ohio-3490, ¶ 26, citing *State v. Dario*, 106 Ohio App.3d 232, 238, 665 N.E.2d 759 (1st Dist.1995).

*State v. Kronenberg*, 8th Dist. Cuyahoga No. 106118, 2018-Ohio-1962, ¶ 31.

**{¶ 13}** The state argues that Williams's actions are sufficient to demonstrate that Williams stalked Graham and that Graham's testimony was necessary to establish the pattern of conduct. We agree. This court, in *Hersh*, was presented with the same issue, where Hersh argued that the state failed to present sufficient evidence that demonstrated a pattern of conduct, after she was convicted of

menacing by stalking. The state argued that Hersh, in 2006, stalked and harassed the victim. Hersh was convicted in 2008. However in 2009, the victim saw Hersh at the grocery store and filed a police report. Hersh was again convicted in 2009 of menacing by stalking the victim, as a result of the grocery store encounter. Hersh argued that the encounters in 2006 and then in 2009 were too remote in time to establish a pattern of conduct. We agreed with Hersh. However, unlike in *Hersh*, where this court decided that the encounters between Hersh and the victim did not establish a pattern of conduct, the facts in this instant case are different. Most distinguishable in *Hersh*, is that the encounters were three years apart. Here Graham testified that Williams, in 2016, stalked her while she worked her postal route. (Tr. 140-141.) The postal inspector got involved after Williams threatened to harm Graham and her dog if Graham did not talk to him. (Tr. 138-139.) Williams pleaded guilty to cruelty to animals, attempted burglary, and menacing by stalking. After that conviction, Graham testified that Williams continued to stalk her on her postal route while riding his bike. (Tr. 140-141.) Graham alerted friends to contact Williams to dissuade him from following her. (Tr. 141.) Neighbors noticed Williams following Graham because Williams always made a scene. (Tr. 142.) These actions continued until the September 2017 incident, when Williams unlawfully entered into the home where Graham was sleeping. We do not find that the trial court violated Evid.R. 404 when it allowed Graham's testimony.

{¶ 14} Williams goes on to contend that besides the testimony regarding his prior conviction for aggravated menacing, none of Graham's testimony reflect the

commission of any crime and should not have been admitted. In other words, Williams argues that all of the testimony regarding these generalized other acts was inadmissible and unconstitutionally prejudiced the jury against him. However, "[i]n determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly threatening." *State v. Derrick*, 8th Dist. Cuyahoga No. 100010, 2014-Ohio-1073, ¶ 22, citing *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.). We find that Williams's contention is misplaced.

{¶ 15} Regarding remoteness in time, Williams relies on *State v. Sawyer*, 8th Dist. Cuyahoga No. 79197, 2002-Ohio-1095o, which states, "[i]n order to be admissible, the other acts used must not be too remote in time, and must be closely related in nature, time, and place to the offense charged. *State v. Henderson*, 76 Ohio App.3d 290, 294, 601 N.E.2d 596 (1991)." However, Graham's testimony demonstrated that Williams's actions were closely related in nature, time, and place to the offense charged. Williams pleaded guilty in 2016 to menacing by stalking. After the guilty plea, Williams continued to follow and threaten Graham. Graham testified that these events continued until the incident that caused Williams's arrest in 2017. We find that the trial court did not err when it admitted the other acts testimony where the conviction of menacing by stalking in 2016 and the 2017 events where Williams continued to follow Graham on her route, continued to threaten her, and unlawfully entered a home where Graham was sleeping, are closely related in

nature, time, and place to the 2017 charge of menacing by stalking and trespass. Additionally, "[s]ince 'closely related in time' is not defined by the statute, the trier of fact is permitted to determine what is 'closely related in time' on a-case-by-case basis. *State v. Thomas*, 1st Dist. Hamilton Nos. C-130620, C-130623, C-130621, C-130624, and C-130622, 2014-Ohio-2803, ¶ 9, citing *Ellet v. Falk*, 6th Dist. Lucas No. L-09-1313, 2010-Ohio-6219, ¶ 22." *State v. Brown*, 2018-Ohio-253, 104 N.E.3d 214, ¶ 43 (7th Dist.).

{¶ 16} We find that Graham's testimony regarding Williams's prior acts of stalking were relevant, were presented for a legitimate purpose, and that the probative value of the other acts testimony was substantially outweighed by the danger of unfair prejudice. We determine that the trial court did not err in denying Williams's motion in limine.

{¶ 17} Williams's first assignment of error is overruled.

## III.  Sufficient Evidence

### A.     Standard of Review

{¶ 18} Claiming insufficient evidence

> raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Herring*, 2017-Ohio-743, 81 N.E.3d 133, ¶ 16 (8th Dist.).

**{¶ 19}** Additionally,

> [a] Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 19. Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. *Id.* Accordingly, an appellate court reviews a trial court's denial of a defendant's motion for acquittal using the same standard it applies when reviewing a sufficiency-of-the-evidence claim. *Id.*

*State v. Hoskin-Hudson*, 8th Dist. Cuyahoga No. 103615, 2016-Ohio-5410, ¶ 7.

## B. Whether Appellant's Convictions were Not Supported by Sufficient Evidence and the Trial Court Erred by Denying Appellant's Motions for Acquittal

**{¶ 20}** Williams argues that the state failed to provide sufficient evidence to support his convictions.

> "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 12. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus."

*State v. Carter*, 2018-Ohio-2238, 114 N.E.3d 673, ¶ 13 (8th Dist.), quoting *State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 15.

**{¶ 21}** Williams was convicted of trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B); menacing by stalking, in violation of R.C. 2903.211(A)(1), with a specification alleging a prior conviction; aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21(A);

and criminal damaging, second-degree misdemeanor in violation of R.C. 2909.06(A)(1). The statutes read as follows:

> No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.

R.C. 2911.12(B).

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2903.211(A)(1).

> No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2903.21(A).

No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:

Knowingly, by any means.

R.C. 2909.06(A)(1).

{¶ 22} Williams argues that the state failed to establish that he trespassed in Brown's home. "Trespass means any entrance (remaining in), knowingly made (done), in a (structure) (residence) (dwelling) (building) of another is unlawful if it is without authority, consent or privilege to do so." *State v. Morton*, 147 Ohio App.3d 43, 54, 2002-Ohio-813, 768 N.E.2d 730 (8th Dist.). Brown testified that Williams did not have permission to enter her home. However, Williams argues that he may have believed he had permission to enter the property because of his "on-again, off-again" relationship with Graham. The testimony reveals that Williams entered the home through an upstairs bathroom door, not the front door. Neither Brown, Graham, nor anyone else present invited Williams into the home. Graham testified that she was startled when she saw Williams and did not know how he got inside. Finally, it was later discovered that the screen door was cut and the interior door was pulled away from the frame near the lock. We find that Williams has not demonstrated that he had permission to be in the home. Therefore, we find that there was sufficient evidence to convict Williams of trespass.

{¶ 23} Williams further argues that the state did not prove the mental distress element of menacing by stalking.

R.C. 2903.211(D)(2) defines "mental distress" as either of the following:

(a) [a]ny mental illness or condition that involves some temporary substantial incapacity; (b) [a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

"Mental distress need not be incapacitating or debilitating." *Jenkins* [*v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422], ¶ 19. Furthermore, "[i]t is the duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions." *Taylor v. Taylor*, 2d Dist. Miami No. 2012-CA-14, 2012-Ohio-6190, ¶ 16. "Expert testimony is not required to establish mental distress, and the trier of fact 'may rely on its knowledge and experience in determining whether mental distress has been caused.'" *Strausser* [*v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597], ¶ 32. Further, the testimony of the victims themselves as to their fear is sufficient to establish mental distress. *Id.*, citing *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

*Elkins v. Manley*, 8th Dist. Cuyahoga No. 104393, 2016-Ohio-8307, ¶ 15.

{¶ 24} Graham testified that Williams had physically abused her, threatened to harm her and her dog, and stalked her on her postal route. Williams was convicted of stalking in 2016. After the conviction, Williams continued to follow Graham on her postal route. Graham testified that at times she would work her route out of order. (Tr. 141.) Graham called mutual friends to ask them to tell Williams to get off of her route. *Id.* The night in question, when Graham saw Williams inside of the home, she was hysterical because she could not believe that Williams was inside of the house. (Tr. 146.) When Graham saw Williams, she stated "And I'm, like, Oh, my God. Oh, my God, why are you in here?" (Tr. 147.) We find

that the state presented sufficient evidence to support the element of mental distress.

{¶ 25} Williams further argues that the evidence was insufficient to demonstrate that a pattern of conduct has been established. R.C. 2903.211(D)(1) states that "a pattern of conduct means two or more actions or incidents closely related in time."

> R.C. 2903.211 does not specifically state what constitutes incidents "closely related in time." Thus, whether incidents should be deemed closely related in time should be resolved by the trier of fact "'considering the evidence in the context of all the circumstances of the case.'" *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.), quoting *State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002-Ohio-3490, ¶ 26, citing *State v. Dario*, 106 Ohio App.3d 232, 238, 665 N.E.2d 759 (1st Dist.1995).

*State v. Kronenberg*, 8th Dist. Cuyahoga No. 106118, 2018-Ohio-1962, ¶ 31.

{¶ 26} Graham testified that after Williams's 2016 conviction for stalking he continued to show up on her postal route threatening her. This conduct continued until the 2017 arrest. We have previously determined, in the first assignment of error, that Williams's actions demonstrated a pattern of conduct. Therefore, we find that there was sufficient evidence presented by the state to establish a pattern of conduct.

{¶ 27} Williams also contends that the evidence was insufficient to convict him of aggravated menacing because Graham did not believe that Williams was going to cause her any physical harm. Graham testified that when she saw Williams in the house, she was hysterical. She also testified that she did not know what to

expect because of Williams's past physical abuse of her. Graham also testified that Williams told her to "get your a** on the couch." She started to obey Williams's order because she was worried something physical could happen.

> This court recently held that "[f]or the offense of aggravated menacing, '[i]t is sufficient to prove that the victim, in the moment, believed the defendant to be in earnest and capable of acting.' 'Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence.'" (Citations omitted.) *Cleveland v. Reynolds*, 8th Dist. Cuyahoga No. 105546, 2018-Ohio-97, ¶ 6.

*Cleveland v. Garrett*, 8th Dist. Cuyahoga No. 106512, 2018-Ohio-4713, ¶ 19.

{¶ 28} We find that because of Williams's past aggressive and abusive behavior towards Graham, it is reasonable to believe that Graham believed that Williams would cause her serious physical harm. Therefore, the evidence was sufficient to convict Williams of aggravate menacing.

{¶ 29} Finally, Williams contends that the evidence was insufficient to convict him of criminal damaging because the police did not dust for fingerprints or test for DNA on the broken screen.

> In *State v. Apanovitch*, 33 Ohio St.3d 19, 27, 514 N.E.2d 394 (1987), the Ohio Supreme Court held the following:
>
> "A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. Consideration of circumstantial evidence as a mitigating factor would inevitably lead to undercutting the underlying conviction itself by implying that a conviction based on circumstantial evidence is inherently less reliable than a conviction based on direct evidence."
>
> "In fact, a conviction based upon purely circumstantial evidence may be just as reliable as a conviction based on direct evidence, if not more so."

*Cleveland v. Battles*, 8th Dist. Cuyahoga No. 104984, 2018-Ohio-267, ¶ 16.

{¶ 30} Graham testified that she was awakened by a sound from the upstairs of the home. Graham then saw Williams inside of the home. The next morning, she discovered damage to the door from the balcony to the upstairs bathroom. The screen door was cut, and the interior door was pulled away from the frame near the lock that was latched. The door was not damaged prior to that night. After the police arrived, they took pictures of the broken door. The state entered the photos into evidence. In light of Graham's testimony and the photo evidence, we find that the circumstantial evidence that Williams damaged the upstairs door was sufficient to convict Williams of criminal damaging.

{¶ 31} Williams's second assignment of error is overruled.

## IV. Manifest Weight of the Evidence

### A. Standard of Review

{¶ 32} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the

defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

*Cleveland v. Garrett*, 8th Dist. Cuyahoga No. 106512, 2018-Ohio-4713, ¶ 14.

{¶ 33} Also,

[a]n appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

*Garrett* at ¶ 15.

## B. Whether Appellant's Convictions are Against the Manifest Weight of the Evidence

{¶ 34} Williams argues that the evidence was not reliable to support the commission of any crime. However, that argument is misplaced. The evidence revealed that Williams had been previously convicted of stalking Graham on her postal route. Williams continued to show up on Graham's route causing her to solicit the help of mutual friends. Additionally, neighbors were aware of Williams's antics because on Graham's postal route, Williams would cause a scene. On the date in question, the evidence reveals that Williams unlawfully entered Brown's home with the intention of confronting Graham. Williams entered the home through an upstairs balcony, after damaging a door. Once inside of the home, Williams caused

Graham to be fearful when he ordered her to "sit her a** on the couch."  Graham was hysterical because, at that time, she did not know how Williams got inside. Graham then testified that she was worried that Williams may cause physical harm to her.

{¶ 35} In reviewing the evidence, we find that the jury did not lose its way. The jury found the evidence and the testimony of the witnesses to be credible.

> Although, we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24 quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

*State v. Bridges*, 8th Dist. Cuyahoga No. 105440, 2018-Ohio-1388, ¶ 12.

{¶ 36} Williams contends that the evidence was unreliable, that the interest of the witnesses were impeached, and that the evidence presented was vague, fragmented, and uncertain.  During trial, the factfinder had the opportunity to listen and observe all of the witnesses' demeanors, gestures, and voice inflections.  "The trial court was in the best position to decide whether to credit the state's witnesses or appellant's witnesses."  *State v. Hughley*, 8th Dist. Cuyahoga No. 90323, 2008-Ohio-6146, ¶ 48.  We conclude that Williams's convictions were supported by competent, credible evidence. We do not find that the convictions were against the manifest weight of the evidence.

{¶ 37} Williams's third assignment of error is overruled.

**{¶ 38}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
RAYMOND C. HEADEN, J., CONCUR